IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELECTROSTIM MEDICAL SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-2745 |
| HEALTH CARE SERVICE CORP., | § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This is a breach-of-contract suit. The plaintiff, Electrostim Medical Services, Inc., provides electrical-stimulation devices for pain management. Electrostim alleges that the defendant, Health Care Service Corp., an insurance company, failed to pay claims for covered treatment Electrostim provided patients. The motion addressed in this Memorandum and Opinion seeks to compel Electrostim to arbitrate the parties' dispute. The specific issue is whether Health Care's delay in moving to enforce a contractual arbitration clause, and the extensive litigation activities before filing the motion, waived the contractual right to arbitrate. Based on the pleadings, the motions and responses, the arguments of counsel, and the relevant law, this court finds waiver and denies Health Care's motion to compel arbitration. The reasons are set out below.

**I.     Background**

Electrostim sued Health Care in Texas state court in August 2010, asserting a failure to pay covered claims submitted for medical supplies and services provided to patients. (Docket Entry No. 1, Ex. 2, Original Pet.). In June 2011, Electrostim filed its first amended petition in Texas state court, asserting causes of action for breach of contract; unjust enrichment; breach of implied

contract; breach as to a third-party beneficiary; quantum meruit; suit on an account; a violation of Texas prompt-payment statutes; a violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a); breach of fiduciary duty under ERISA; and declaratory judgment on both the non-ERISA and ERISA claims. (Docket Entry No. 1, Ex. 5, 1st Am. Pet.).

Electrostim's allegations spanned periods during which the parties operated under a contract known as the Participating Provider Agreement ("Agreement") and periods in which the Agreement was no longer in effect. The parties entered into the Agreement in January 2007. Health Care notified Electrostim in April 2010 that it was terminating the Agreement effective August 2010. (*Id.*, ¶¶ 7, 8, 12).

The Agreement included the following provision on alternative dispute resolution ("ADR"):

> In order to avoid the cost and time consuming nature of litigation, any dispute between [Health Care] and [Electrostim] arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement or any prior Agreement between [Health Care] and [Electrostim] shall be resolved using alternative dispute resolution mechanisms instead of litigation. [Health Care] and [Electrostim] agree and acknowledge that it is their mutual intention that this provision be construed broadly so as to provide for mediation and/or arbitration of all disputes arising out of their relationship as third-party Payer and Ancillary Provider. The parties further agree that resolution of any dispute pursuant to this Agreement shall be in accordance with the procedures detailed below.

(Docket Entry No. 23, Ex. 1, Agreement, pt. X.H). The Agreement stated that the parties are to try resolving disputes first through an initial meeting or mediation. "In the event mediation is not successful in resolving the dispute, either [Health Care] or [Electrostim] may submit the dispute to final and binding arbitration under the commercial rules and regulations of the American Arbitration

Association . . . ." (*Id.*) Electrostim attached the Agreement to its original petition. (Docket Entry No. 1, Ex. 2).

The relevant timetable of litigation events is set out below.

- On July 26, 2011, Health Care filed its original answer in state court, (Docket Entry No. 1, Ex. 7, Original Answer), and its notice of removal to federal court, (Docket Entry No. 1).

- The parties conferred under Rule 26(f) of the Federal Rules of Civil Procedure and filed their joint discovery/case management plan with the court. Health Care filed the plan on November 4, 2011. (Docket Entry No. 8). On December 7, 2011, this court entered its scheduling and docket-control order. That order included a discovery cut-off, a pretrial motion deadline, and a date for docket call. (Docket Entry No. 10).

- On December 15, 2011, Health Care filed an agreed motion for a protective order covering confidential information exchanged in discovery. (Docket Entry No. 11).

- Health Care filed its initial disclosures under Rule 26 on December 30, 2011. (Docket Entry No. 13).

- Health Care filed an unopposed motion for leave to file an amended answer on January 13, 2012. (Docket Entry No. 14). On January 17, 2012, Health Care filed its first amended answer. (Docket Entry No. 16). That answer listed a number of affirmative defenses, including failure to state a claim; lack of jurisdiction over the claims; lack of standing; preemption by the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, and 5 C.F.R. § 890.105 *et seq.*; failure to assert

3

claims against the correct party under 5 C.F.R. § 890.107 and chapter 1551 of the Texas Insurance Code; failure to exhaust administrative remedies; and federal sovereign immunity. (*Id.*, ¶¶ 54–60).

- On January 27, 2012, Health Care filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6). (Docket Entry No. 17). Health Care argued that "the amount of the claims is a bit of a moving target" because Electrostim had insufficiently "identified the claims in dispute." (*Id.*, ¶ 2). "In its Amended Petition, [Electrostim] alleged the claims totaled just under $8.3 million. However, in the Joint Discovery/Case Management Plan, that amount is listed as 'in excess of $12 million.'" (*Id.* (quoting Docket Entry No. 8, at 2)). Health Care sought dismissal because "the total amount of claims includes claims for services and/or supplies rendered to members of plans for federal government employees and retirees, as well as Texas state government employees and retirees," and these claims could not be included in this suit. (*Id.*, ¶ 3). Instead, under FEHBA, Electrostim had to bring its claims for federal-employee patients before the United States Office of Personnel Management. Health Care also sought dismissal on the basis that Electrostim's ERISA-based causes of action were statutorily barred and that claims for services to FEHBA-plan patients were barred by sovereign immunity. (*Id.*, ¶¶ 4–23). As to the claims arising under state-employee benefit plans, Health Care alleged that Electrostim's suit necessarily raised claims for persons covered by the Employees Retirement System of Texas ("ERS") and the Teacher Retirement System of Texas ("TRS") and that Texas law required administrative-review procedures for disputed

claims. Because Electrostim did not pursue these administrative remedies, Health Care argued that any such claims included in Electrostim's suit should be dismissed. (*Id.*, ¶¶ 24–33).

- Between April and June 2012, Health Care served Electrostim with discovery requests. On April 5, 2012, Health Care served its first set of interrogatories and first request for production and asked for depositions under Federal Rule of Civil Procedure 30(b)(6). (Docket Entry No. 24, ¶ 6).

- On April 16, 2012, the parties filed a joint status report on mediation. (Docket Entry No. 21). That report stated that "[a]t this stage, the parties do not feel that mediation or any other form of ADR would be helpful. The parties are continuing to gather information from each other, and are unable at this time to fully formulate their settlement positions." (*Id.*, ¶ 1). The report continued: "The parties anticipate that once they have exchanged information, and conducted sufficient discovery, they will be able to engage in meaningful settlement discussions. If those discussions do not prove fruitful, the parties are in agreement that mediation would be the most appropriate form of ADR." (*Id.*, ¶ 2).

- Health Care propounded additional discovery in May 2012, including a second request for production of documents, a second set of interrogatories, and a first request for admissions. (*See* Docket Entry No. 24, ¶ 7; Docket Entry No. 31, ¶ 5). The parties conferred in June and July over Electrostim's responses. (Docket Entry No. 24, ¶ 8).

- On July 10, 2012, Health Care filed two motions. The first was a motion to compel arbitration under the Agreement. (Docket Entry No. 23). The motion was filed 23 months after the case was first filed in state court and almost a year after Health Care removed to federal court. The second motion was a motion to compel discovery responses from Electrostim. (Docket Entry No. 24). Health Care filed this motion "subject to its previously-filed Motion to Compel Arbitration." (*Id.* at 1).

- This court heard Health Care's discovery issue in a premotion conference on August 2, 2012, at which the parties also argued the motion to dismiss. (Docket Entry No. 29). The gist of Health Care's dismissal argument was again that Electrostim's breach-of-contract claim insufficiently identified the insurance claims that were allegedly unpaid or underpaid. Health Care also reurged its argument that some of the claims Electrostim had made fell under various federal and state insurance programs and were barred either by preemption or by sovereign immunity. Health Care sought to dismiss some claims under Rule 12(b)(6) based on preemption and similar theories and other claims under Rule 12(b)(1) based on sovereign immunity. Health Care provided an affidavit from a manager of its Provider Access & Servicing Strategy Department, stating that 99 of the disputed claims were claims for payment from Electrostim between January 2008 and July 2010 for participants in a federal insurance plan. (*See* Docket Entry No. 20, Ex. A, Oswalt Aff., ¶ 3). This court granted the motion to dismiss without prejudice and allowed Electrostim to file an amended complaint. The court also ordered the parties to exchange additional information about the insurance claims.

- Electrostim filed its response to the motion to compel arbitration on August 10, 2012, arguing that Health Care had waived its right to compel arbitration. (Docket Entry No. 31).

- Electrostim filed its second amended complaint on August 16, 2012. (Docket Entry No. 32). This complaint limited the breach of contract claim, as follows:

    > As a result of [Health Care]'s breach, [Electrostim] has been damaged. Specifically, due to [Health Care]'s breach by failure to follow the terms of the Agreement, all of the goods and services that were provided to [Health Care's Blue Cross Blue Shield of Texas] plan participants and/or participants of other Blue Cross /Blue Shield plans fall within [Electrostim]'s damages for breach of contract to the extent they are not precluded by another applicable law. All non-precluded claims fall within the scope of the breach of contract because [Health Care] is obligated to pay for said services or would have been obligated to pay for said services had [Health Care] not violated the agreement and improperly terminated the Agreement.

    (*Id.*, ¶ 15).

- On August 29, 2012, the court heard additional oral argument on discovery and on the motion to compel arbitration. (Docket Entry No. 35). The parties agreed that because the Agreement ended in August 2010, disputes based on services provided after that date were nonarbitrable. The court ruled that nonarbitrable claims would be litigated and all arbitrable claims would be arbitrated unless the court found that Health Care had waived its contractual arbitration right. The court deferred ruling on waiver.

- Since that hearing, Health Care has moved to dismiss Electrostim's second amended complaint based solely on Rule 12(b)(6). (Docket Entry No. 36). Health Care filed

7

this motion "subject to its and without waiving its previously filed Motion to Compel Arbitration." (*Id.* at 1). The motion argued that "[b]ecause ERISA pre-empts all Plaintiff's state law claims, Plaintiff does not have standing under ERISA, and any surviving state law claims are insufficiently pleaded, all such claims must be dismissed. The only claim that can survive dismissal is Plaintiff's breach of contract claim pertaining to benefit claims submitted during the term of the Agreement." (*Id.* at 2). Health Care reserved its right to move to dismiss this claim as well after Electrostim finished compiling information about the claims it alleged were wrongfully processed. (*Id.* at 3).

Electrostim concedes that the Agreement contains a valid arbitration clause. Electrostim has argued that the clause is unenforceable for two reasons: (1) only some of the claims in this case would be subject to arbitration and it would be inequitable and prejudicial to have to arbitrate some claims and litigate others; and (2) Health Care waived its right to compel arbitration by failing timely to request arbitration and by extensively engaging in litigation, to Electrostim's detriment. This court previously ruled that the first ground did not present a persuasive basis for denying arbitration. This court now finds that the second ground is persuasive: Health Care has waived its right to compel arbitration.

## II. The Applicable Legal Standard

The Federal Arbitration Act ("FAA") requires district courts to direct parties to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Federal policy strongly favors enforcing arbitration agreements. *Dean Witter Reynolds*, 470 U.S. at 217; *Moses H. Cone Mem. Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24 (1983).  When a party moves to compel arbitration, the FAA requires district courts to order arbitration of arbitrable claims.  *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.* (*In re Sedco, Inc.*), 767 F.2d 1140, 1147 (5th Cir. 1985).  Arbitration agreements, like other contracts, may be invalidated by contract defenses like fraud, duress, unconscionability, or waiver.  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986) ("'The right to arbitration, like any other contractual right, can be waived.'" (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (per curiam))).  Because of the strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

Courts generally hesitate to find waiver in all but the clearest cases due to the strong presumption of enforceability.  *See, e.g.*, *MC Asset Recovery LLC v. Castex Energy, Inc.* (*In re Mirant Corp.*), 613 F.3d 584, 588 (5th Cir. 2010); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999).  "'Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'"  *In re Mirant*, 613 F.3d at 588 (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)).  "A party generally invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims."  *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009).  "To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'"  *In re Mirant*, 613 F.3d at 589 (quoting *Subway Equip.*, 169 F.3d at 329).  The question of whether a party

9

has waived its right to arbitration "'depends on the facts of each case.'" *Id.* (quoting *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985)).

Electrostim argues that Health Care waived its contractual arbitration right by substantially invoking the judicial process, including moving to dismiss, engaging in discovery, and filing other litigation documents.  Electrostim also argues that compelling arbitration at this stage would be prejudicial; because Health Care waited so long to assert its arbitration right and engaged in such extensive litigation activities, Electrostim has spent significant time and expense and has responded to discovery that is generally not required in arbitration.

Both elements — invoking the judicial process and prejudice — are addressed below.

### III.   Analysis

#### A.   Substantially Invoking the Judicial Process

A lapse in time — even a lengthy one — between when litigation starts and a party seeks to compel arbitration is not dispositive.  What matters more is how extensively the parties have engaged the litigation process during that time.  *See, e.g.*, *In re Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig.*, — F. Supp. 2d —, —, 2012 WL 1069169, at *5 (E.D. La. 2012) (finding no waiver in part because "despite the fact that this case is over two years old, this litigation is still in its early stages").  A key inquiry is whether finding no waiver would effectively give a litigant "a second bite at the apple through arbitration."  *Petrol. Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009); s*ee also In re Apple iPhone*, 2012 WL 1069169, at *5 ("The defendant in *In re Mirant* was found to have substantially invoked the judicial process, because holding otherwise would have allowed it to ascertain how the case was proceeding in court before seeking arbitration." (citing 613 F.3d at 589–90)).

One commonly analyzed factor is the extent to which the party seeking arbitration filed pleadings or motions indicating a desire to have the court rather than an arbitrator resolve the dispute. "A party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Petrol. Pipe*, 575 F.3d at 480; *In re Mirant*, 613 F.3d at 589. Although the Fifth Circuit has declined to adopt a bright-line rule that filing any motion to dismiss substantially invokes the judicial process and waives arbitration, *In re Mirant*, 613 F.3d at 589, the court distinguished between "'perfunctory motion[s] to dismiss'" that will not waive the right to compel arbitration, *id.* (quoting *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995)), and motions to dismiss that "invoke[] the judicial process to a greater degree," and may result in waiver, *id.*

In this second category of motions to dismiss, the *In re Mirant* court placed motions raising affirmative defenses, which "'admit the initial sufficiency and completeness of the claim while asserting other grounds for avoiding the normal consequences of that concession.'" *Id.* (quoting *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1125–26 (5th Cir. 1988)). The court also included motions seeking dismissal with prejudice for failure to state a claim. *Id.* (citing *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 940 (5th Cir. 1988)). Finally, the court included motions to dismiss that do not include a motion to compel arbitration in the alternative. *Id.* at 589–90. *But cf. Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897–98 (5th Cir. 2005) (finding no waiver when a defendant concurrently filed a motion to compel arbitration with a motion for summary judgment and then appealed the denial of the motion to compel arbitration); *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 236–38 (5th Cir. 1998) (finding no waiver when a defendant filed a motion to dismiss with a motion to compel arbitration and appealed the denial of the motion to compel).

In this case, Health Care moved to dismiss many of Electrostim's claims, on preemption, immunity, or failure-to-exhaust grounds, before seeking arbitration. As in *In re Mirant*, Health Care's motion to dismiss was not presented as an alternative to a motion to compel arbitration. *See* 613 F.3d at 589–90; *see also Keytrade*, 404 F.3d at 897–98; *Steel Warehouse*, 141 F.3d at 236–38. Nor was it accompanied by a reservation of arbitration rights. Instead, Health Care asserted its arbitration right long after it first moved to dismiss and after the parties filed extensive briefs on that motion. Health Care's motion to dismiss is in the category that the *In re Mirant* court described as substantially invoking the judicial process.

In some cases, filing a motion to dismiss is consistent with a pursuing a right to arbitration. For example,

> [In a] case involv[ing] several claims that were non-arbitrable . . . , "a motion to dismiss may not be inconsistent with a right to arbitrate; it might be necessary for the defendant to file the motion both to sort out the claims before it can intelligently decide whether to arbitrate and to protect its rights in court if the arguably non-arbitrable claims do turn out to be non-arbitrable."

*In re Mirant*, 613 F.3d at 591–92 (quoting *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992) (citing *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 461–66 (2d. Cir. 1985))); *see also Sweater Bee*, 754 F.2d at 463 ("Plainly, the portions of the motion [to dismiss] addressed to nonarbitrable claims do not constitute a waiver. And where, as here, a plaintiff files an intricate complaint, setting forth numerous claims outside the scope of, though partially related to, the arbitrable claims, he should not be altogether surprised that a defendant takes the protective step of filing a motion to dismiss . . . ." (citation omitted)).

Health Care argues that its motion to dismiss was to "sort out Plaintiff's claims, not a request for adjudication on the merits" and thus not evidence of waiver. (Docket Entry No. 33, at 3 (citing *St. Mary's*, 969 F.2d at 589)). The record does not fully support this contention. Whether the insurance claims at issue were arbitrable or not depends on whether they arose during the period the Agreement was effective or after. This case is unlike the situation described in *St. Mary*'s in that Health Care, the party seeking arbitration, has not asserted any difficulty in determining which claims are subject to the arbitration clause and which are not. *Cf.* 969 F.2d at 589 ("St. Mary's case was a simple breach of contract case; Disco does not assert that there was any dispute that St. Mary's claim was arbitrable.").

The fact that Health Care moved to dismiss arbitrable claims as well as nonarbitrable claims is also significant. The federal courts hold no monopoly on deciding preemption, sovereign-immunity, and administrative-exhaustion issues. An arbitrator would have been able to address and decide them. *Cf., e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 268 (2009) ("[T]he Court has recognized that arbitral tribunals are readily capable of handling the factual and legal complexities of antitrust claims, notwithstanding the absence of judicial instruction and supervision and . . . there is no reason to assume at the outset that arbitrators will not follow the law." (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 232 (1987) (internal quotation marks omitted))).

Another factor relevant to determining whether the party seeking arbitration has substantially invoked the judicial process is the extent to which that party has engaged in discovery and other pretrial activity. *See, e.g.*, *Republic*, 383 F.3d at 344–45; *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1162 (5th Cir. 1986). In *Republic*, the movant answered counterclaims; conducted discovery, including taking four depositions; amended its complaint; filed the required pretrial

13

materials with the district court; and filed two motions to compel discovery, a motion for summary judgment, and a motion *in limine* to limit the evidence its opponent could produce at trial, all before seeking to enforce arbitration. 383 F.3d at 345. In *Price*, the party seeking to compel arbitration initiated extensive discovery, filed two answers, filed motions to dismiss and for summary judgment, and filed and obtained two extensions of pretrial deadlines. 791 F.2d at 1162. In both cases, the court found that the party seeking arbitration had indicated its desire to resolve an arbitrable dispute through litigation and substantially invoked the judicial process to the opponent's detriment. *Republic*, 383 F.3d at 345; *Price*, 791 F.2d at 1161–62.

Health Care engaged in significant pretrial activity before moving to compel arbitration. It removed the case to federal court, answered Electrostim's amended petition, and filed an amended answer in federal court that raised affirmative defenses asserting grounds later raised in its motion to dismiss. Health Care also attended a Rule 26(f) conference, filed a joint discovery/case management plan with the court, filed a joint agreed motion for protective order, submitted its initial disclosures, filed a joint status report with the court, and filed its unopposed motion for leave to file an amended answer. Health Care propounded written discovery on Electrostim on the merits of the claims and defenses, not limited to arbitrability, and, as noted, filed a motion to dismiss that was not perfunctory because it sought dismissal with prejudice, did not request arbitration in the alternative, and sought judicial determination of arbitrable as well as nonarbitrable claims.

The discovery and other court filings here were not as extensive as in *Republic* and in *Price*. On the other hand, the discovery Health Care sought was explicitly directed toward the merits. The discovery was not to determine what made certain claims arbitrable and others not: that was determined by whether the claim arose during the contract period. This aspect of Health Care's

14

discovery, combined with the volume of pretrial activity in this case, also supports finding that Health Care substantially invoked the judicial process.

Because Health Care's motion to dismiss sought judicial review of arbitrable as well as nonarbitrable claims, and Health Care's discovery was also significant litigation activity, Health Care substantially invoked the judicial process.

### B. Prejudice

In a waiver analysis, "'prejudice' means 'the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue.'" *Petrol. Pipe*, 575 F.3d at 480 (quoting *Republic*, 383 F.3d at 346). The Fifth Circuit has cited three factors as "'particularly relevant'" to determining prejudice: "(1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." *Id.* (quoting *Republic*, 383 F.3d at 346).

As noted, the discovery Health Care propounded related to arbitrable claims as well as nonarbitrable claims. "[W]hile discovery relating to non-arbitrable claims is not prejudicial, where the pretrial activity was related to all of the parties' claims, including those that were conceded to be arbitrable, arbitration would result in prejudice." *Republic*, 383 F.3d at 346. The discovery here favors a finding of prejudice. At several stages, Health Care indicated that its discovery was not limited to determining which claims were arbitrable. In the joint status report filed months before moving to compel arbitration, Health Care represented to the court that ongoing discovery was necessary "to fully formulate [the parties'] settlement positions," "to engage in meaningful settlement discussions," and "[i]f those discussions do not prove fruitful," to pursue mediation.

(Docket Entry No. 21, ¶¶ 1–2). During oral argument on its simultaneously filed motions to compel arbitration and for discovery, Health Care explained that the discovery it sought was to clarify whether the insurance claims were made under plans governed by ERISA or under some other plan, such as a federal health-benefits plan, which may have raised preemption or exhaustion defenses. (Docket Entry No. 29). At the next hearing on discovery disputes and on the arbitration motion — which occurred after Electrostim amended its complaint to exclude preempted claims — Health Care explained that it needed discovery to determine which claims — whether arbitrable or not — were subject to dismissal under Rule 12(b)(6). (Docket Entry No. 35). Health Care identified no problem distinguishing which claims were to be arbitrated (those arising before August 2010) and which were to be litigated (those arising after August 2010). Health Care requested discovery largely to determine whether Electrostim's claims were subject to dismissal for reasons other than arbitrability. This factor contributes to a finding of prejudice.

Health Care's litigation activities required Electrostim to spend significant time and incur expense beyond what is generally contemplated in arbitration. Electrostim had to respond to Health Care's motion to dismiss, and respond to discovery requests. Electrostim asserts that it spent $130,000.00 on attorneys' fees before Health Care moved to compel arbitration. (Docket Entry No. 31, ¶ 17). Health Care argues that Electrostim failed to submit documents showing the attorneys' fees it incurred in litigating, but this does not affect the waiver analysis. It is undisputed that Electrostim had to respond to motions, file an amended complaint, and respond to discovery requests, all requiring legal expense. This factor supports a finding of prejudice.

Finally, the delay in asserting the right to arbitrate contributes to finding waiver. When this suit was removed in July 2011, Health Care knew about the arbitration clause; Electrostim had

16

included a copy of it in its original state-court complaint. It was not until July 2012 — a year after removal — that Health Care moved to compel arbitration. This case is unlike *In re Mirant* and similar cases in which the defendant noted and reserved its right to compel arbitration in each of its filings. And even in *In re Mirant*, the court ultimately found prejudice because of the delay and the litigation activities. *See* 613 F.3d at 591–92. Health Care did not reserve its right to arbitrate in the motions, pleadings, or filings made before seeking arbitration.

Facts that indicate a nonstrategic delay in asserting a right to compel arbitration may weigh against waiver. For example, if a party moves to compel arbitration before filing an answer, or before receiving a ruling on a motion to dismiss, that can weigh against finding waiver. *See, e.g.*, *In re Apple iPhone*, 2012 WL 1069169, at *5 (finding no waiver because Apple's Rule 12(b)(6) motions were not submitted for decision and the litigation was "still in its early stages," in part because no answer had been filed). When Health Care moved to compel arbitration, this court had not yet ruled on its motion to dismiss. The present record does not support an inference that Health Care delayed moving to compel arbitration for strategic reasons. The record does not indicate the clear gamesmanship of waiting to see if the court dismisses and seeking arbitration after an adverse result. *See In re Mirant*, 613 F.3d at 590 (explaining that by moving to compel arbitration only after the court ruled on its motion to dismiss, "Castex attempted to play 'heads I win, tails you lose,' which is the worst possible reason for failing to move for arbitration sooner than it did." (quoting *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) (internal quotation marks omitted))). But the delay and the extensive litigation activities Health Care engaged in before seeking to compel arbitration prejudiced Electrostim and support a waiver finding.

17

## IV. Conclusion

Because Health Care substantially invoked the judicial process and because its delay and extensive litigation activities — including moving to dismiss and propounding broad discovery requests — resulted in prejudice to Electrostim, the motion to compel arbitration, (Docket Entry No. 23), is denied.

SIGNED on October 30, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge