**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ELECTROSTIM MEDICAL SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-2745 |
| HEALTH CARE SERVICE CORP., | § § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

This lawsuit arises from claims for insurance payments relating to a medical device intended for pain relief.  The device and related services were provided by Electrostim Medical Services, Inc. ("Electrostim") to patients in different states and covered by different health-insurance plans, many issued by entities affiliated with Blue Cross Blue Shield.  Electrostim sued Health Care Service Corp., doing business as Blue Cross Blue Shield of Texas ("BCBSTX"), alleging wrongful failure to pay medical claims for the device and services.  Electrostim filed the suit in Texas state court; BCBSTX removed.  (Docket Entry No. 1).

BCBSTX has moved to dismiss Electrostim's second amended complaint.  (Docket Entry No. 36).  Discovery revealed a fundamental disconnect between many of the healthcare claims Electrostim asserted it had submitted to BCBSTX and the claims that BCBSTX had received from Electrostim.  According to BCBSTX, Electrostim submitted approximately 8,800 claims that arose before the parties' Participating Provider Agreement ended on August 1, 2010.  BCBSTX denied approximately 2,300 of these claims.  Electrostim provided BCBSTX a list of approximately 20,000 claims that arose after the parties' Participating Provider Agreement was terminated.  BCBSTX

identified only 273 of those claims as having been submitted to it for payment. Electrostim acknowledges that it had not submitted the rest of the posttermination claims to BCBSTX. Instead, Electrostim submitted these claims to other Blue Cross Blue Shield entities around the country.

BCBSTX has moved to dismiss all the causes of action arising from the nonpayment of both pre- and post-termination healthcare claims. Based on the pleadings; the motions, responses, and supplements; and the relevant law, the court grants the motions to dismiss. Because this resolves all claims, an order of dismissal is entered separately.

The reasons for these rulings are set forth below.

## I.    Background

In June 2011, Electrostim filed its first amended petition in Texas state court, asserting causes of action for breach of contract, unjust enrichment, breach of implied contract, third-party beneficiary, quantum meruit, suit on an account, violation of prompt-payment statutes, § 502 (a) of ERISA, 29 U.S.C. §1132(a), and breach of fiduciary duty under ERISA. Electrostim identified the disputed healthcare claims as arising both during and after the parties operated under the Participating Provider Agreement. The parties entered into that Agreement in January 2007. BCBSTX notified Electrostim in April 2010 that it was terminating the Agreement effective August 2010. (Docket Entry No. 1, Ex. 5, Pls.' 1st Am. Pet., ¶¶ 7–8, 12).

On January 27, 2012, BCBSTX moved to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Docket Entry No. 17). BCBSTX argued that Electrostim had not "identified the claims in dispute, and the amount of the claims is a bit of a moving target. In its Amended Petition, [Electrostim] alleged the claims totaled just under $8.3 million. However, in the Joint Discovery/Case Management Plan, that amount is listed as 'in excess of $12 million.'" (*Id.*,

¶ 2 (quoting Docket Entry No. 8, at 2)).  BCBSTX asserted that despite this confusion, the pleadings alleged at least some claims "for services and/or supplies rendered to members of plans for federal government employees and retirees, as well as Texas state government employees and retirees." (*Id.*, ¶ 3).  BCBSTX moved to dismiss these federal and state government employee claims.

In the motion and at a hearing at which the court heard argument, BCBSTX asserted that Electrostim had failed to identify which claims were unpaid and what insurance plans covered these claims.  (Docket Entry No. 29).  BCBSTX argued that to the extent the disputed denials included claims covered by federal insurance plans, the causes of action had to be dismissed under Rule 12(b)(6).  Claims for such patients arose under the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8914, and could not be asserted under ERISA or state law.  (Docket Entry No. 17, ¶¶ 4–23).  BCBSTX also argued that to the extent the disputed denials included claims for patients covered by the Employees Retirement System of Texas ("ERS") and the Teacher Retirement System of Texas ("TRS"), the causes of action had to be dismissed under Rule 12(b)(1).  According to BCBSTX, under Texas law, disputes over denials of claims for patients covered by the ERS had to be appealed to the Travis County, Texas district court.  Because Electrostim had neither pursued nor exhausted administrative remedies, BCBSTX moved under Rule 12(b)(1) to dismiss any such claims included in Electrostim's suit.  (*Id.*, ¶¶ 24–33).

Electrostim had argued that BCBSTX's motion to dismiss failed to identify which, if any, healthcare claims fell under these categories.  BCBSTX had replied with an affidavit from a manager of its Provider Access & Servicing Strategy department.  The affidavit stated that BCBSTX had received 99 claims for payment from Electrostim between January 2008 and July 2010 for beneficiaries covered by the federal insurance plan.  (*See* Docket Entry No. 20, Ex. A, Oswalt Aff.,

¶ 3).  The court granted BCBSTX's motion to dismiss without prejudice and with leave to amend so that Electrostim could file an amended complaint addressing these deficiencies.  The court also ordered the parties to exchange and compare information identifying what claims were at issue.

Electrostim filed its second amended complaint on August 16, 2012.  (Docket Entry No. 32).  This complaint limited the breach of contract claim, as follows:

> Specifically, due to BCBSTX's breach by failure to follow the terms of the Agreement, all of the goods and services that were provided to BCBSTX plan participants and / or participants of other Blue Cross / Blue Shield plans fall within EMSI's damages for breach of contract to the extent they are not precluded by another applicable law.  All non-precluded claims fall within the scope of the breach of contract because BCBSTX is obligated to pay for said services or would have been obligated to pay for said services had BCBSTX not violated the agreement and improperly terminated the Agreement.

(*Id.*, ¶ 15).  The second amended complaint asserted causes of action for suit on account, violation of prompt-payment statutes, § 502(a) of ERISA, 29 U.S.C. §1132(a), breach of fiduciary duty under ERISA, unjust enrichment, breach of implied contract, third-party beneficiary, quantum meruit, declaratory judgment as to both non-ERISA and ERISA claims, an injunction, damages, and attorneys' fees.

BCBSTX moved to dismiss Electrostim's second amended complaint.  (Docket Entry No. 36).  This motion to dismiss was based solely on Rule 12(b)(6).  (*Id.* at 1).  BCBSTX argued that "[b]ecause ERISA pre-empts all Plaintiff's state law claims, Plaintiff does not have standing under ERISA, and any surviving state law claims are insufficiently pleaded, all such claims must be dismissed.  The only claim that can survive dismissal is Plaintiff's breach of contract claim pertaining to benefit claims submitted during the term of the Agreement."  (*Id.* at 2).  BCBSTX

4

reserved its right to move to dismiss this part of the breach of contract claim depending on the claims Electrostim identified as disputed.  (*Id.* at 3).

In its supplemental briefing, BCBSTX stated that it had located approximately 8,800 claims from Electrostim, of which roughly 2,300 had been denied.  (Docket Entry No. 73, at 2).  The 2,300 claims fell into four categories:

- 74 claims under the Federal Employee Program ("FEP") administered by BCBSTX;

- One claim under a Texas state government plan administered by BCBSTX;

- Two nongovernment "ASO" claims under plans administered by BCBSTX; and

- 2,219 BlueCard claims under plans administered by Blue Cross Blue Shield entities other than BCBSTX.

(Docket Entry No. 42, Ex. 2).  BCBSTX amended its motion to dismiss to include the pretermination claims that it received from Electrostim and declined.[1]  (Docket Entry No. 73, at 2 & n.2).  In its supplemental briefing, BCBSTX reasserted its arguments for dismissing the causes of action for suit on an account, prompt-payment violations, third-party beneficiary rights, and declaratory judgment. (*Id.* at 4 & n.6).  BCBSTX also argued that to the extent Electrostim based its quasi- or implied-contract claims on denials of these pretermination healthcare claims, those causes of action must also be dismissed.  (*Id.* at 4).  BCBSTX argued that to the extent the healthcare claims at issue arose under ERISA plans, the state-law causes of action had to be dismissed and the ERISA cause of action for breach of fiduciary duty was insufficiently pleaded to proceed.  (*Id.* at 6–9).  BCBSTX

---

[1] BCBSTX explained that "[b]ecause the [second amended complaint]'s allegations focus exclusively on denied claims, BCBSTX's arguments are directed at the nearly 2300 denied claims."  (Docket Entry No. 73, at 2 n.2).  To determine the number of wholly denied claims, BCBSTX tallied the claims with a "Total Allowed" amount of zero dollars on the spreadsheet showing the pretermination healthcare-claims Electrostim submitted to BCBSTX.  (*Id.*)

also argued that the second amended complaint presented no factual or legal basis for causes of action for denials of healthcare claims covered by the Federal Employee Program, the ASO programs, Texas state government plans, or BlueCard plans.  (*Id.* at 9–14).

BCBSTX supplemented its motion to dismiss to cover denials of healthcare claims arising from services provided after the parties' Participation Agreement had ended.  (Docket Entry No. 82). Electrostim had submitted only 273 of these posttermination claims to BCBSTX.  The rest had been submitted to other Blue Cross Blue Shield entities around the country.  During an April 23, 2013 hearing, Electrostim argued that the refusal or failure of the other Blue Cross Blue Shield entities to pay these claims were part of this case against BCBSTX.  (Docket Entry No. 86, at 58).  BCBSTX responded that these claims could not be part of the causes of action Electrostim asserted in this case because the claims had never been submitted to, or denied by, BCBSTX.  There was no basis to hold for BCBSTX liable for failing to pay claims it had never reviewed, and Electrostim did not sue the entities that had reviewed the claims and failed to pay them.  As this court told Electrostim after hearing its counsel's representations about the history of the 20,000 unsubmitted claims:  "'By your own description of what occurred, you don't have the proper party because you didn't submit [the claims] to the entity that you are telling me you think you should have submitted [them] to.  And you didn't sue the entities that you did submit [the claims] to.'"  (Docket Entry No. 82, at 2 (quoting Docket Entry No. 86, at 58)).  BCBSTX argued that as to the 273 posttermination claims submitted to BCBSTX and the rest of the 20,000 claims never submitted to BCBSTX, Electrostim's causes of action failed as a matter of law.  (*Id.* at 2 & n.2).[2]

---

[2]  BCBSTX also argued that Electrostim lacked Article III standing with respect to claims that had been submitted to Blue Cross Blue Shield entities other than BCBSTX.  (Docket Entry No. 82, at 3). BCBSTX argued that Electrostim "cannot show a causal connection between any hypothetical injury and conduct by BCBSTX because, as the claims were never submitted to BCBSTX, BCBSTX took no action —

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  In *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*.  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).  *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)

---

let alone one that allegedly injured [Electrostim] — with respect to the Unsubmitted Claims." (*Id.*)  As Electrostim points out, and BCBSTX has not disputed, the spreadsheets exchanged during discovery identified and presented to BCBSTX the nearly 20,000 claims that Electrostim submitted to non-BCBSTX entities for payment.  BCBSTX does not argue that it presently lacks the information necessary to process and evaluate Electrostim's claims.  BCBSTX argues that it has no obligation to do so at this point, noting that most of the claims were time-barred by when Electrostim submitted them to BCBSTX.  By continuing to reject Electrostim's right to payment for the "unsubmitted" claims, BCBSTX's actions appear to satisfy the constitutional standing requirement.

("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also Richardson v. Keffer*, 471 F. App'x 304, 305 (5th Cir. 2012) ("Although Rule 15 requires leave to be freely given, 'leave to amend . . . is by no means automatic.'" (quoting *Rourke v. Thompson*, 11 F.3d 47, 51 (5th Cir. 1993))); *Mosley v. Bowie County*, 275 F. App'x 327, 328 (5th Cir. 2008) ("The record is devoid of reasons for the denial of leave to amend the complaint; accordingly, the denial of such leave constitutes and abuse of discretion."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (citation omitted)).

A plaintiff, however, should be denied leave to amend a complaint if the court determines that the "proposed amendment . . . clearly is frivolous" or "advanc[es] a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed. 2010); *see also Rio Grande Royalty Co. v. Energy Transfer Partners*, 620 F.3d 465, 468 (5th Cir. 2010) ("The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss."); *Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

## III.    The Denial of the Pretermination Claims

### A.     The Breach of Contract Causes of Action

Electrostim alleged that BCBSTX breached the parties' Participation Agreement in three respects: (1) by failing to pay claims; (2) by improperly terminating the parties' Agreement; and (3) by failing to review the termination as the Agreement specified.  (Docket Entry No. 32, ¶¶ 11–15). After discovery and further examination of the disputed healthcare claims, BCBSTX supplemented its motion to dismiss the first part of the breach of contract cause of action, arguing that Electrostim could not identify a basis to hold BCBSTX liable.  As to the second and third parts of Electrostim's breach of contract causes of action — the parts based on improper termination — BCBSTX argued that there was no viable basis for liability.  Electrostim alleged that the reason BCBSTX gave for terminating the Agreement — because  Electrostim failed to maintain a place of business in Texas — was not valid cause for termination.  Electrostim also alleged that BCBSTX failed to review that termination as the Agreement required.  (*Id.*, ¶¶ 13–14).

Electrostim argued that dismissal was improper because BCBSTX terminated the Agreement for cause when cause did not exist.  (Docket Entry No. 41, ¶¶ 10–13).  But the Agreement provided that either party could terminate without cause by giving 90 days' advance notice.  (Docket Entry No. 32-2, at 4, Agreement at Part VIII(B)).  It is undisputed that BCBSTX gave Electrostim notice 90 days before terminating effective August 1, 2010.  It is also undisputed that BCBSTX kept the Agreement in effect during the 90 days before that date.  Whether BCBSTX had valid cause to terminate the Agreement or whether BCBSTX failed to provide review of such a decision does not affect the outcome because BCBSTX had a valid basis to terminate without cause and did so consistent with the Agreement's requirements.

The breach of contract cause of action based on wrongful termination must be dismissed. Electrostim cannot state a plausible claim that BCBSTX breached the parties' Agreement by terminating it.  The dismissal is with prejudice because previous attempts to amend have failed to cure the pleading deficiency and further amendment would be futile.

### B.    The State-Law Causes of Action and ERISA Preemption

Before discovery, the parties disputed the extent to which the claims arose from services provided to patients with healthcare plans governed by ERISA.  To the extent the denied claims are covered by ERISA plans, BCBSTX argues that ERISA preempts the following causes of action:

- suit on an account;

- violation of the Texas prompt-pay statutes;

- unjust enrichment;

- breach of implied contract;

- third-party beneficiary;

- quantum meruit; and

- declaratory judgment.

(Docket Entry No. 36, at 6).

Section 502(a) of ERISA states that a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  State-law claims that duplicate or fall under the scope of this statutory remedy are preempted.  "Section 502, by providing a civil enforcement cause of action, completely preempts

any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999); *see also Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

To the extent Electrostim's causes of action are based on or duplicate  patients' plan benefits, ERISA preemption applies.  *See, e.g.*, *Graham v. Metro. Life Ins. Co.*, 347 F. App'x 957, 960 n.4 (5th Cir. 2009) (explaining that a breach of contract claim was preempted because it duplicated the ERISA cause of action for benefits); *Pierce v. United Rentals, Inc.*, 2003 WL 22289882, at *4 (N.D. Tex. Aug. 28, 2003) (ruling that ERISA preempted state law quantum meruit and unjust enrichment allegations that recharacterized benefits claims).

Electrostim acknowledges that "ERISA does preempt certain state law claims."  Electrostim argues that dismissal for preemption "is not appropriate under a Rule 12(b)(6)" motion.  (Docket Entry No. 41, ¶ 14).  Electrostim argues that it does not know which claims arise from ERISA benefit plans.  (*See id.*)  During oral argument, however, the parties acknowledged that the vast majority of the disputed claims in this suit arose under ERISA plans.  To the extent Electrostim's state-law claims involve ERISA-covered plans, they are dismissed.  To the extent there are non-ERISA plans, the state-law claims must be dismissed for the following additional reasons.

### 1.    Suit on an Account

The elements of a suit on an account are that: (1) there was a sale and delivery of merchandise; (2) the amount of the account is just, that is, that the prices are charged in accordance with an agreement or in the absence of an agreement, they are the usual, customary and reasonable

prices for that merchandise; and (3) the amount is unpaid. *Hose Pro Connectors, Inc. v. Parker Hannifin Corp.*, 889 S.W.2d 555, 558 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Pat Womack, Inc. v. Weslaco Aviation, Inc.*, 688 S.W.2d 639, 641 (Tex. App.—Corpus Christi 1985, no writ); *Jones v. Ben Maines Air Conditioning, Inc.*, 621 S.W.2d 437, 439 (Tex. Civ. App.—Texarkana 1981, no writ). Rule 185 of the Texas Rules of Civil Procedure allows a plaintiff to make a *prima facie* showing with an affidavit meeting certain requirements, and provides that a defendant faced with such an affidavit must preserve his right to contest the amount owed. This is a state procedural rule, not a rule of substantive law. *See ABB, Inc. v. Pena*, 2011 WL 906651, at *3 (S.D. Tex. Mar. 15, 2011); *Sneed Shipbuilding, Inc. v. Spanier Marine Corp.*, 125 F.R.D. 438, 442 (E.D. Tex. 1989).

In the response brief, Electrostim appears to abandon its claim for a suit on a sworn account. (Docket Entry No. 41, ¶ 15). Electrostim instead argues that it has a viable claim for suit on an open account. An open account exists when the parties have conducted past and current dealings in a financial account that remains open, as long as the parties expect to conduct future dealings in that account. *Facility Ins. Corp. v. Emp'rs Ins. of Wausau*, 357 F.3d 508, 513 (5th Cir. 2004). Neither the second amended complaint nor prior pleadings identify a good or service Electrostim provided to BCBSTX. There are no allegations that Electrostim and BCBSTX have conducted past dealings establishing an account, or that Electrostim expects to continue such dealings. To the extent this cause of action could survive ERISA preemption, dismissal for failure to state a claim is required. The dismissal is with prejudice because prior attempts to amend have been deficient and further amendment would be futile.

**2.    Prompt Payment**

To maintain a Texas prompt-payment cause of action, "a party must establish three elements: (1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of [the Insurance Code] with respect to the claim." *GuideOne Lloyds Ins. Co. v. First Baptist Church*, 268 S.W.3d 822, 830–31 (Tex. App.—Fort Worth 2008, no pet.) (citing *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001); *Protective Life Ins. Co. v. Russell*, 119 S.W.3d 274, 286 (Tex. App.—Tyler 2003, pet. denied)).  Electrostim alleged that it "is a beneficiary of insurance contracts," that "BCBSTX has breached its contracts with its insureds," and that BCBSTX's "conduct constitutes multiple violations" of the Texas Insurance Code.  (Docket Entry No. 32, ¶ 20).  Putting aside concerns about whether Electrostim has sufficiently pleaded how or when BCBSTX breached its contracts with its insureds or what conduct constituted "multiple violations" of the Insurance Code, Electrostim has not pleaded facts that provide a basis for it to assert a prompt-pay cause of action against BCBSTX.

Section 542.060(a) of the Texas Insurance Code provides relief only to the insurance policy holder or the beneficiary.  A beneficiary must be identified in the insurance policy or contract.  TEX. INS. CODE ANN. § 542.051(2)(A) (West 2009).  Electrostim alleges only that it is a "beneficiary of the insurance contracts between BCBSTX and its insureds."  (Docket Entry No. 32, ¶ 20).  The claim is dismissed, with prejudice because prior amendments have not corrected this pleading defect and there is no indication that future efforts would be anything but futile.

### 3.    Unjust Enrichment and Quantum Meruit

"To recover under quantum meruit, a claimant must prove that: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such

13

circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).  The efforts must have been "undertaken for the person to be charged and not just that the efforts benefitted that person." *KUV Partners, LLC v. Fares*, 2011 WL 944453, at \*16 (Tex. App.—Fort Worth Mar. 17, 2011, no pet.).  "In Texas, quantum meruit is appropriate only where the plaintiff provides valuable services specifically for the defendant, not merely where the services benefitted the defendant." *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 595–96 (N.D. Tex. 2009) (emphasis omitted). Quantum meruit provides an equitable remedy that does not arise out of a contract, but is independent of it.  *Vortt Exploration Co.*, 787 S.W.2d at 944.  Founded on unjust enrichment, quantum meruit "will be had when non-payment for the services rendered would result in an unjust enrichment to the party benefitted by the work." *Id.* (quotation omitted).  "Quantum meruit 'is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Speck v. First Evangelical Lutheran Church*, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978)).

Electrostim does not allege that it provided healthcare services to BCBSTX or that services provided to patients were also provided to, or specifically benefitted, BCBSTX.  (*See* Docket Entry No. 32, ¶¶ 29–31, 43–46).  Courts have refused to recognize an unjust enrichment or quantum meruit cause of action based on healthcare services provided to a participant or beneficiary of a healthcare insurance policy or plan.  *See Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 n.11 (E.D. Tex. 2011).  "It is counterintuitive to say that services provided to an insured are also provided to its insurer.  The insurance company derives no benefit from those services; indeed, what

the insurer gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit." *Id.* (quoting *Travelers Indem. of Conn. v. Losco Grp.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)); *see also Joseph M. Still Burn Ctrs., Inc. v. AmFed Nat'l Ins. Co.*, 2010 WL 1279504, at *5–6 (S.D. Ga. Mar. 31, 2010) (dismissing quantum meruit causes of action because the medical provider performed services to a patient, not the defendants, "and no cognizable, let alone measurable, benefit or value to Defendant [was] identified by [the provider]"); *Cedars Sinai Med. Ctr. v. Mid-West Nat. Life Ins. Co. of Tenn.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) (noting that a medical provider's claim for quantum meruit lacked merit because it did not treat the patient at the insurance company's request).

Electrostim's unjust enrichment and quantum meruit causes of action are dismissed because they fail as a matter of law. The dismissal is with prejudice because the causes of action cannot be saved by amendment.

### 4.   Breach of Implied Contract

The parties dispute the elements of a cause of action for breach of implied contract. Electrostim argues that the elements reflect those of quantum meruit: (1) the plaintiff provided valuable services or materials; (2) the services or materials were provided for the defendant; (3) the defendant accepted the services or materials; and (4) the defendant had reasonable notice that the plaintiff expected compensation for the services or materials. *Cf. Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received."). BCBSTX argues that the elements require "a 'meeting of the minds,' i.e., mutual agreement," and that "each party must both consent to the terms of the contract and communicate that consent. For an alleged implied contract to be

15

enforceable by a court, all of its essential terms must not only be mutually agreed upon by the prospective parties, but also must not be indefinite — i.e., all material terms must be clear, certain, and specific for an alleged implied contract to be enforceable." (Docket Entry No. 36, at 13 (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609–10 (Tex. 1972))).

The Texas courts support BCBSTX's argument that Electrostim has failed to allege elements of the cause of action.   As a district court applying Texas law recently explained,

> [i]n Texas, a contract can be either express or implied — the only real difference between the two being the manner of proof required to establish a valid contract. *Plotkin v. Joekel*, 304 S.W.3d 455, 476–77 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).   Whether express or implied, the elements of a valid contract are: "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutually binding." *Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist] 2002, no pet.).   To plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach.   *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

*Stewart v. JP Morgan Chase Bank*, 2012 WL 4932169, at *2 (N.D. Tex. Oct. 1, 2012); *see also Northfield Ins. Co. v. Mid-Continent Cas. Co.*, 2010 WL 3701573, at *5 (S.D. Tex. Sept. 16, 2010) ("A contract in fact is implied where, despite the absence of any express declaration of intent by the parties, their acts are such as to indicate, according to the common understanding and the ordinary courses of dealing between men, a mutual intent to contract." (quotations omitted)).

Electrostim's second amended complaint fails to allege all the elements of breach of an implied contract.   Moreover, Electrostim's breach of implied contract cause of action essentially

duplicates the quantum meruit and unjust enrichment causes of action.  The cause of action for breach of implied contract is dismissed, with prejudice.

### 5.      Third-Party Beneficiary

There is "no support for the proposition that healthcare providers . . . are ipso facto third-party beneficiaries of their patients' health-insurance contracts with standing to enforce such contracts."  *Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 811 n.2 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Hermann Hosp. v. Liberty Life Assur. Co. of Bos.*, 696 S.W.2d 37, 41 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (holding that the mere fact that a hospital would be the ultimate recipient of health-insurance policy funds did not make it a third-party beneficiary of the policy)).  *But cf. Key Life Ins. Co. of S.C. v. Taylor*, 456 S.W.2d 707, 709 (Tex. Civ. App.—Beaumont 1970, writ ref'd n.r.e.) (an employee of the holder of a "Blanket Accident Policy" was entitled to sue under the policy because the insurer and employer intended the contract to benefit the employee).

The controlling factor in determining whether a third party may enforce a contract is the contracting parties' intent.  *In re Moose Oil & Gas Co.*, 613 F.3d 521, 527 (5th Cir. 2010) (citing *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 641 (Tex. 1999); *Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1456 (5th Cir. 1987) (citing *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501 (Tex. 1975)).  Electrostim has not alleged facts that, if proven, would show that it was a third-party beneficiary of the BCBSTX insurance policy.  *See Hermann Hosp.*, 696 S.W.2d at 41.  Electrostim's third-party beneficiary cause of action is dismissed, with prejudice, because prior leave to amend has failed to cure the pleading defects and further amendment would be futile.

### 6.      Declaratory Judgment

Electrostim has abandoned this cause of action.  (Docket Entry No. 41, ¶ 26).  It is dismissed.

## C.    Claim for Breach of Fiduciary Duty Under ERISA

Electrostim's second amended complaint also asserted a cause of action for breach of fiduciary duty under ERISA, 29 U.S.C. § 1109.  (Docket Entry No. 32, ¶¶ 25–28).  Electrostim alleged that BCBSTX breached fiduciary duties "by failing to promptly pay [Electrostim's] Claims." (*Id.*, ¶ 27).  Electrostim has abandoned this cause of action.  (Docket Entry No. 84, at 11).  It is dismissed.[3]

---

[3]  To the extent Electrostim has not abandoned a breach of fiduciary duty cause of action for any of the disputed claims for medical services, dismissal is still proper.  Section 1109 provides that a fiduciary who violates his ERISA obligations is liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).  A plan participant may claim damages under § 1132(a)(2) or equitable relief under  § 1132(a)(3).  Electrostim seeks money, but for itself.  Under § 1132(a)(2), any damages must be sought on the plan's behalf, not the plaintiff's.  *See McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237–38 (5th Cir. 1995); *Metro. Life Ins. Co. v. Palmer*, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002); *Murphy v. Wal-Mart Assocs.' Grp. Health Plan*, 928 F. Supp. 700, 710 (E.D. Tex. 1996).  This claim fails.

Even if Electrostim had also asserted a right to recover equitable relief for a breach of fiduciary duty, this would fail because money damages under § 1132(a)(1)(B) for benefits denial cannot coexist with relief under § 1132(a)(3).  *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 n.10 (5th Cir. 2013) ("'[W]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under [§ 1132(a)(1)(B)] rather than a fiduciary duty claim brought pursuant to [§ 1132(a)(3)].'" (quoting *McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000))); *Khan v. Am. Int'l Grp., Inc.*, 2009 WL 2923048, at *8 (S.D. Tex. 2009) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)); *see also Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Because [the plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").

And even if Electrostim could seek benefits under § 1109, Electrostim has not adequately pleaded that BCBSTX is a fiduciary under ERISA with respect to any of the plans at issue in the pretermination claims.  Electrostim made conclusory allegations that "BCBSTX is a fiduciary to the plan participants and [Electrostim]."  (Docket Entry No. 32, ¶ 27).  Even if Electrostim had alleged a factual or legal basis for BCBSTX's fiduciary duty, Electrostim is a "non-enumerated party" that lacks standing to assert such an ERISA claim absent an assignment.  *See Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealth Care Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (en banc); *see also N. Cypress Med. Ctr. Operating Co. v. Medsolutions, Inc.*, 2010 WL 4702298, at *1 n.1 (S.D. Tex. Nov. 10, 2010) (noting that a breach of fiduciary

18

### D.    The Federal Employee Program Claims

Earlier in this litigation, the court dismissed causes of action related to services Electrostim provided participants in the Federal Employee Program, a health-benefits plan for federal government employees.  (Docket Entry No. 29).  The court granted Electrostim leave to amend. (*Id.*)  Discovery uncovered several disputed claims that involved federal beneficiaries.  To the extent that Electrostim intended to reassert state-law causes of action based on FEP claims, in the second amended complaint, those causes of action are dismissed as preempted by FEHBA.  *See, e.g.*, *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.*, 2012 WL 3028107, at *2 (S.D. Tex. July 24, 2012) (finding that FEHBA preempts causes of action for denials of claims for patients under FEHBA plans).  This dismissal is with prejudice because the causes of action fail as a matter of law and further leave to amend would be futile.

### E.    The ASO and Government Benefits Plan Claims

Discovery revealed that three of Electrostim's healthcare claims involve ASO and government benefits plans.  The two ASO claims involve a major airline's healthcare plan.  (Docket Entry No. 73, at 10).  One claim was denied as untimely; it was submitted on Electrostim's behalf nearly 16 months after the patient received the services, and the contract-specified time limit is 12 months.  (Docket Entry No. 32-2, at 9, Ex. A to Agreement).  The other claim was denied based on the absence of coverage for the service Electrostim provided.  (Docket Entry No. 73, at 10–11).  The

_____

duty cause of action requires that there be "an express and knowing assignment of an ERISA fiduciary breach claim" before an assignee can bring such claims (quotation omitted)).  Electrostim's second amended complaint makes no allegations of an assignment or other basis for standing to assert a breach of fiduciary duty.  To the extent it has not been abandoned, the cause of action is dismissed, with prejudice because leave to amend would be futile.

claim submitted under the government benefits plan involved a Texas university's healthcare plan. The claim was denied because Electrostim's services were experimental and not covered. (*Id.*)

Electrostim's breach of contract cause of action based on these three healthcare claims must be dismissed. The second amended complaint contains no factual allegations that the denials were improper or incorrect. Electrostim has not alleged that, under the Agreement, the services were "Covered Services" under the Agreement. Electrostim has failed to allege a plausible basis for entitlement to payment.

The ERISA cause of action based on these three healthcare claims also fails. Electrostim seeks relief under § 1132(a)(1)(B), which allows a plan participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the term of the plan, or to clarify his rights to future benefits under the terms of the plan to recover benefits due." Electrostim has failed to identify a plan term that makes its claims eligible for reimbursement. *See Sanctuary Surgical Centre, Inc. v. UnitedHealth Grp., Inc.*, 2013 WL 149356, at *6 (S.D. Fla. Jan. 14, 2013) (dismissing ERISA benefits claims because the complaint failed to identify plan terms entitling the plaintiff to reimbursement); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 WL 762498, at *14 (D.N.J. Mar. 6, 2012) (noting that the court must have "enough factual information to determine whether the [services] were indeed covered services under the plan"). Nor has Electrostim shown that it has standing as a "non-enumerated party" under § 1132 because it has not alleged that it has a valid assignment from the subscribers to whom it provided services. *See Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealth Care Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (en banc).

The second amended complaint fails to state a cause of action for breach of contract or under ERISA § 1132(a)(1)(B) with respect to the ASO and government benefits plan claims. Those causes of action are dismissed with prejudice because multiple attempts to amend have failed to cure these defects and further amendment would be futile.

### G.     The BlueCard Claims

Electrostim disputes the denial by BCBSTX and other plans of 2,219 pretermination BlueCard claims. The second amended complaint fails to allege a plausible basis for relief for the denial of these claims. The reasons for the failure to pay varied from claim to claim and across the plans at issue:

> Many claims were denied because certain requested information concerning the claim was not received. Other claims were denied because the products or services were not covered benefits under the plan. Still others were denied because the patient's participation in the plan had terminated. And, numerous claims were denied as duplicates of earlier submitted claims. Yet the SAC sheds no light on whether EMSI challenges some or all of these bases for denying its claims for reimbursement, let alone the grounds on which EMSI disputes the denials.

(Docket Entry No. 73, at 13). Electrostim's breach of contract cause of action based on the BlueCard claims must be dismissed because the second amended complaint contains no factual allegations that the denials were improper or incorrect.

Even if Electrostim's second amended complaint had alleged the grounds for disputing the failure to pay its BlueCard claims, BCBSTX is not the proper defendant. Under § 1132(a)(1)(B) of ERISA, "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan[.]" *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844 (5th Cir. 2013) (quotation omitted); *see also N. Cypress Med. Ctr. Operating Co. v.*

*CIGNA Healthcare*, 782 F. Supp. 2d 294, 306 (S.D. Tex. 2011) (finding that the plan administrator was a proper defendant because it "was responsible for making determinations to pay benefits at amounts drastically lower than the applicable ERISA plans require, and as such, exerts control over plan administration in a manner that harms [the provider]").  Electrostim must plead sufficient facts to show that for each plan that denied submitted claims, BCBSTX "exercised actual control over the denial."  *LifeCare Mgmt.*, 703 F.3d at 845.  "Where a [third-party administrator] exercises control over a plan's benefits claims process, and exerts that control to deny a claim by incorrectly interpreting a plan in a way that amounts to an abuse of discretion, liability may attach."  *Id.*  The second amended complaint does not allege that BCBSTX exercised actual control over the denial of Electrostim's BlueCard claims.  Electrostim failed to state an ERISA cause of action against BCBSTX with respect to the BlueCard claims.

Because multiple attempts to amend have been unsuccessful, the causes of action arising from the pretermination denial of the BlueCard claims are dismissed with prejudice.

## IV.    Analysis of the Posttermination Claims

BCBSTX moves to dismiss Electrostim's causes of action based on healthcare claims that arose after BCBSTX terminated the parties' Provider Agreement.  Of the approximately 20,000 healthcare claims after that date, Electrostim submitted only 273 to BCBSTX for payment.  Blue Cross initiated a new claims-processing policy in June 2010.  (Docket Entry No. 89, at 2–3).  Under the revised policy, payment claims were to be sent to the Blue Cross entity in the state where the services were provided.  BCBSTX was the proper entity to process claims only for services provided in Texas.  According to Electrostim, the claims it submitted to non-BCBSTX Blue Cross affiliates around the country "were returned to EMSI without any processing or adjudication or, in some

22

instances, with a response that the claim was filed with the wrong Blue Cross plan." (*Id.* at 3).  It is unclear why the Blue Cross entities failed to process Electrostim's claims for services provided in their states or why they referred Electrostim's non-Texas-based claims to BCBSTX.  But it appears that Electrostim neither submitted the claims to BCBSTX nor appealed or challenged the non-BCBSTX entities' refusal to pay.  It is undisputed that Electrostim did not sue the non-BCBSTX entities.  It also appears that so much time has passed since the services underlying these claims were provided and payments refused that the deadlines for submitting the claims to the proper entity or  for filing suit have likely passed.

Whether the posttermination claims include all 20,000 healthcare claims or only the 273 submitted to BCBSTX for payment, it is clear that the second amended complaint fails to state a basis for relief under any of Electrostim's causes of action.  Electrostim's breach of contract cause of action fails as to the posttermination healthcare claims because there was no longer a contract in effect between the parties.  To the extent Electrostim bases its breach of contract cause of action on posttermination healthcare claims, the claim is dismissed, with prejudice.

Electrostim's causes of action for equitable relief based on the posttermination healthcare claims also fail as a matter of law.  Electrostim asserts unjust enrichment, quantum meruit, and breach of implied contract, (Docket Entry No. 32, ¶¶ 29–35; 43–46), arguing that one party cannot receive a benefit at the expense of another even if the parties do not have a formal contract, *see, e.g.*, *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 605–06 (5th Cir. 2000); *Burlington N. R.R. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998).

Unjust enrichment occurs "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros.*, 832 S.W.2d at 41.  A quantum meruit cause of action requires that the plaintiff have provided" valuable services specifically for the defendant," not merely that the "services benefitted the defendant." *Eagle Metal Prods.*, 651 F. Supp. 2d at 595–96.  To state a cause of action for breach of an implied contract, a plaintiff must allege not only that the defendant received a benefit, but must also demonstrate that the parties had a meeting of the minds as to the contract's essential terms. *See Northfield Ins.*, 2010 WL 3701573, at *5; *see also Gen. Elec. Co. v. M&M X-Press Serv., Ltd.*, 2008 WL 4747211, at *4 (S.D. Tex. Oct. 27, 2008) (noting that an implied contract "arises from the acts and conduct of the parties" (quotation omitted)).

Electrostim does not allege that it provided services or benefits to BCBSTX.  Instead, the allegations make clear that Electrostim provided goods and services to Blue Cross Blue Shield subscribers.  *See, e.g.*, *Encompass Office Solutions*, 775 F. Supp. 2d at 966 n.11.  Electrostim's unjust enrichment and quantum meruit causes of action must be dismissed on this basis.  *See, e.g.*, *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex., Inc.*, 2012 WL 1252512, at *3 (S.D. Tex. Apr. 11, 2012) (dismissing claims because the patients were the beneficiaries of the provider's services — not defendant Blue Cross Blue Shield).  The breach of implied contract cause of action must be dismissed for similar reasons, and also because Electrostim has not alleged facts showing that after BCBSTX terminated its agreement with Electrostim, the parties had a meeting of the minds as to the essential terms of an implied contract. *See Northfield Ins.*, 2010 WL 3701573, at *5.

Because the second amended complaint shows that Electrostim conferred no benefit on BCBSTX and does not allege elements essential to show an implied contract that was breached,

Electrostim's unjust enrichment, quantum meruit, and breach of implied contract causes of action as to the posttermination claims must be dismissed. The dismissal is with prejudice because further amendment would be futile.

Causes of action based on the posttermination claims Electrostim submitted to entities other than BCBCSTX fail for an additional reason. Electrostim bases its second amended complaint on BCBCSTX's improper denial of claims. Yet Electrostim acknowledges that BCBSTX did not receive the vast majority of the claims at issue before this lawsuit. BCBSTX has shown, and Electrostim has acknowledged, and that BCBSTX was not the Blue Cross entity responsible for reviewing or paying healthcare claims arising outside Texas. Electrostim's causes of action for prompt pay violations, under § 1132(a), for breach of fiduciary duty under ERISA, and asserting third party beneficiary status, must be dismissed. There are no allegations in the second amended complaint that could plausibly show that BCBSTX is liable for denying claims submitted to other entities.

Electrostim's causes of action arising from the denial of the 20,000 posttermination healthcare claims have additional deficiencies. Even if Electrostim had submitted the claims to BCBSTX and it was the proper Blue Cross entity to determine whether claims for services provided outside Texas would be paid, Electrostim's causes of action fail. Without a contract between Electrostim and BCBSTX, the breach of contract cause of action fails. There is no ERISA cause of action because Electrostim does not allege any assignment of the insured's rights under an ERISA plan. To state a basis to recover under ERISA or for breach of an insurance policy, Electrostim must plead that the patients covered under the plan or policy assigned their rights to Electrostim. *See Christus Health Gulf Coast v. Aetna, Inc.*, 347 S.W.3d 726, 734 (Tex. App.—Houston [14th Dist.]

2011), *aff'd*, 397 S.W.3d 651 (Tex. 2013); *see also Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 811 (D.N.J. 2011) (finding that a failure "to plead facts (for example, actual assignment language) to support their legal conclusion that a valid assignment of the proper breadth was given by patients" made the claim deficient).  "Medical providers cannot, on their own account, enforce the terms of a healthcare plan."  *Christus Health*, 347 S.W.3d at 734.  When seeking to recover benefits owed to a patient under an ERISA plan, a noncontractual provider can bring suit only "through an assignment to stand in the shoes of a beneficiary."  *Id.* (citing *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009)).  The second amended complaint contains no assignment allegations.  Electrostim alleged only that it "is a participant or beneficiary as defined in ERISA, (Docket Entry No. 32, ¶ 23), and that Electrostim is an ERISA beneficiary or "a beneficiary of the insurance contracts between BCBSTX and its insureds," (*id.*, ¶ 20).

Finally, even if Electrostim had alleged that it had valid assignments for the unsubmitted claims, Electrostim did not, and could not, allege that such assignments entitled it to sue BCBSTX for the denial of posttermination claims for services covered by or claimed under plans or policies issued by other insurers.  *See Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) ("'[A]n assignee takes all of the rights of the assignor, no greater and no less.'" (quoting *FDIC v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001))); *see also Houk v. Comm'r of Internal Revenue*, 173 F.2d 821, 825 (5th Cir. 1949) ("[A]n assignee . . . stands in the same position as its assignor had stood").  The second amended complaint does not allege that the patients whose claims were submitted to non-BCBSTX entities were insured by BCBSTX or members of ERISA-governed plans administered by BCBSTX.  Electrostim has alleged no connection between

BCBSTX and the patients who obtained goods or services from, and who would have had to have assigned their rights to, Electrostim.

In sum, the complaint fails to state a basis for relief for the denial of the posttermination claims, both for those claims submitted to entities other than BCBSTX and those few submitted to BCBSTX.  The second amended complaint must be dismissed with prejudice because multiple attempts to amend have failed to correct the deficiencies, and even apart from the age of the claims and resulting untimeliness, future amendment would be futile.

**V.      Conclusion**

The motion to dismiss is granted, with prejudice.  The court will enter a separate order of dismissal.

SIGNED on August 2, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

27