IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELECTROSTIM MEDICAL SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-2745 |
| HEALTH CARE SERVICE CORP., | § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This lawsuit arises from claims for insurance payments relating to a medical device intended for pain relief. The device and related services were provided by Electrostim Medical Services, Inc. ("Electrostim") to patients who lived in different states and were covered by different health-insurance plans. Many of those plans were issued by entities affiliated with Blue Cross Blue Shield. Electrostim sued one such entity, Health Care Service Corp., doing business as Blue Cross Blue Shield of Texas ("BCBSTX"), alleging wrongful failure to pay healthcare claims for the device and services. Electrostim filed the suit in Texas state court and BCBSTX removed. (Docket Entry No. 1).

After many pretrial conferences and the exchange of information between the parties, this court granted BCBSTX's motion to dismiss Electrostim's second amended complaint, with prejudice. (Docket Entry No. 90). Electrostim has moved to amend the findings and judgment. (Docket Entry No. 92). The standards that apply to the motion are those under Rule 59(e) of the Federal Rules of Civil Procedure.

As explained in more detail below, before the parties completed the pleadings, motion papers, and briefs submitted to the court on BCBSTX's motion to dismiss, the parties were required to exchange extensive information about the types of healthcare claims Electrostim was demanding payment for.  This information was integral to the second amended complaint and the motion to dismiss.  This information made it clear that while BCBSTX had received some of the claims on which Electrostim was suing, BCBSTX had no record of receiving many claims.  This information also made it clear that of the claims Electrostim believed it had submitted to BCBSTX — approximately 8,800 claims that arose before the parties' Participating Provider Agreement (the "Agreement") ended on August 1, 2010—BCBSTX denied approximately 2,300.  Electrostim's own records, referred to in the second amended complaint, (*see* Docket Entry No. 32, ¶ 17; *id.*, Ex. 2), and later filed with the court, (*see* Docket Entry No. 55), made clear that of the 20,000 claims arising after the Agreement ended, only 273 could be identified as having ever been submitted to BCBSTX for payment.  Electrostim *acknowledged* that it had not submitted to BCBSTX approximately 19,127 posttermination claims for which it sought payment in this suit against BCBSTX.  Instead, Electrostim had submitted these claims to other Blue Cross Blue Shield entities around the country, entities it did not sue in this case.

This court granted BCBSTX's motion to dismiss all the causes of action asserted in the second amended complaint arising from the nonpayment of both pre- and post-termination healthcare claims.  In this motion to amend the findings and judgment, Electrostim argues that this court abused its discretion in refusing to allow a third amended complaint and erred in finding that repleading would be futile.  Electrostim asserts that the court's decision on the motion to dismiss improperly judged the merits.  Electrostim does not cite Rule 12(d) of the Federal Rules of Civil

Procedure, but essentially argues that this court erred in deciding the motion to dismiss without

converting it to one for summary judgment.

For the reasons explained below, this court finds Electrostim's arguments unavailing. The

motion to amend the findings and judgment is therefore denied.

## I.       The Rule 59(e) Standard

A motion to alter or amend a judgment is appropriately considered under Federal Rule of

Civil Procedure 59(e), which allows for "[a] motion to alter or amend a judgment [that is] filed no

later than 28 days after the entry of the judgment."  This rule applies to a motion to reconsider a

court's previous ruling.  *See, e.g.*, *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003).

The bar for relief under this rule is set high.  As the Fifth Circuit has explained:

> A Rule 59(e) motion—which asks the court to set aside its previous
> judgment—"serves the narrow purpose of allowing a party to correct
> manifest errors of law or fact or to present newly discovered
> evidence.   Reconsideration of a judgment after its entry is an
> extraordinary remedy that should be used sparingly."

*Ewans v. Wells Fargo Bank, N.A.*, 389 F. App'x 383, 389–90 (5th Cir. 2010) (quoting *Templet v.*

*HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)); *accord* 11 CHARLES ALAN WRIGHT, ET AL.,

FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124–26 (2d ed. 1995).  Such a motion "cannot be

used to raise arguments which could, and should, have been made before the judgment issued" or

"to argue a case under a new legal theory."  *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)

(internal quotation marks omitted).

## II.    Background

The procedural history of this case set out in the earlier opinion is repeated here because it makes clear that Electrostim had ample notice of the legal and factual deficiencies BCBSTX identified in the pleadings and ample opportunity to address them before the court ruled on the motion to dismiss.  The history also makes clear that the documents this court referred to in analyzing BCBSTX's motion to dismiss were within the categories of documents a court may consider under Rule 12(b)(6) without converting the motion to one under Rule 56.  *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012).

The electronic file containing the outstanding invoices and accounts that Electrostim claimed the right to be paid for were clearly referenced in, and integral to, both the second amended complaint and the motion to dismiss.  Electrostim stated that it would have attached the entire electronic file to the complaint but for the "voluminous nature."  (Docket Entry No. 34, Ex. 2, at ¶¶ 3–4).  BCBSTX discussed the records in the electronic file in the supplemental brief to its motion to dismiss.  (Docket Entry No. 73, at 1-3).  Both parties clearly intended the court to consider the records ruling on the motion to dismiss.  This court follows other district courts within this circuit that have similarly considered such materials in deciding a motion to dismiss even though they were not physically attached to the complaint or motion to dismiss.  *Chauvin v. State Farm Fire & Cas. Co.*, 450 F. Supp. 2d 660, 663 (E.D. La. 2006) *aff'd,* 495 F.3d 232 (5th Cir. 2007); *see also Comeaux v. Trahan*, No. 12-0767, 2012 WL 5400044, at *3-4 (W.D. La. Nov. 5, 2012) (considering in a motion to dismiss a franchise agreement that was referenced in the plaintiff's complaint but not attached because of confidentiality issues).

In June 2011, Electrostim filed its first amended petition in Texas state court, asserting causes of action for breach of contract, unjust enrichment, breach of implied contract, third-party beneficiary, quantum meruit, suit on an account, violation of prompt-payment statutes, § 502 (a) of ERISA, 29 U.S.C. §1132(a), and breach of fiduciary duty under ERISA.  Electrostim identified the disputed healthcare claims as arising both during and after the parties operated under the Participating Provider Agreement.  The parties entered into that Agreement in January 2007. BCBSTX notified Electrostim in April 2010 that it was terminating the Agreement effective August 2010.  (Docket Entry No. 1, Ex. 5, at ¶¶ 7–8, 12).

On January 27, 2012, BCBSTX moved to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  (Docket Entry No. 17).  BCBSTX argued that Electrostim had not "identified the claims in dispute, and the amount of the claims is a bit of a moving target.  In its Amended Petition, [Electrostim] alleged the claims totaled just under $8.3 million.  However, in the Joint Discovery/Case Management Plan, that amount is listed as 'in excess of $12 million.'" (*Id.* at ¶ 2 (quoting Docket Entry No. 8, at 2)).  BCBSTX asserted that despite this confusion, the pleadings alleged at least some claims "for services and/or supplies rendered to members of plans for federal government employees and retirees, as well as Texas state government employees and retirees." (*Id.* at ¶ 3).  BCBSTX moved to dismiss these federal and state government employee claims.

In the motion and at a hearing at which the court heard argument, BCBSTX asserted that Electrostim had failed to identify which claims were unpaid and what insurance plans covered these claims.  (Docket Entry No. 29).  BCBSTX argued that to the extent the disputed denials included claims covered by federal insurance plans, the causes of action had to be dismissed under Rule

12(b)(6).    Claims for such patients arose under the Federal Employee Health Benefits Act

("FEHBA"), 5 U.S.C. §§ 8901–8914, and could not be asserted under ERISA or state law.  (Docket

Entry No. 17, ¶¶ 4–23).  BCBSTX also argued that to the extent the disputed denials included claims

for patients covered by the Employees Retirement System of Texas ("ERS") and the Teacher

Retirement System of Texas ("TRS"), the causes of action had to be dismissed under Rule 12(b)(1).

According to BCBSTX, under Texas law, disputes over denials of claims for patients covered by

the ERS had to be appealed to the Travis County, Texas district court.  Because Electrostim had

neither pursued nor exhausted administrative remedies, BCBSTX moved under Rule 12(b)(1) to

dismiss any such claims included in Electrostim's suit.  (*Id.*, ¶¶ 24–33).

Electrostim had argued that BCBSTX's motion to dismiss failed to identify which, if any,

healthcare claims fell under these categories.  BCBSTX had replied with an affidavit from a manager

of its Provider Access & Servicing Strategy department.  The affidavit stated that BCBSTX had

received 99 claims for payment from Electrostim between January 2008 and July 2010 for

beneficiaries covered by the federal insurance plan.  (*See* Docket Entry No. 20, Ex. A, at ¶ 3).  The

court granted BCBSTX's motion to dismiss without prejudice and with leave to amend so that

Electrostim could file an amended complaint addressing these deficiencies.  The court also ordered

the parties to exchange and compare information identifying what claims were at issue.

Electrostim filed its second amended complaint on August 16, 2012.  (Docket Entry No. 32).

This complaint limited the breach of contract claim, as follows:

> Specifically, due to BCBSTX's breach by failure to follow the terms
> of the Agreement, all of the goods and services that were provided to
> BCBSTX plan participants and / or participants of other Blue Cross
> / Blue Shield plans fall within EMSI's damages for breach of contract
> to the extent they are not precluded by another applicable law.  All
> non-precluded claims fall within the scope of the breach of contract

> because BCBSTX is obligated to pay for said services or would have
> been obligated to pay for said services had BCBSTX not violated the
> agreement and improperly terminated the Agreement.

(*Id.* at ¶ 15).  The second amended complaint asserted causes of action for suit on account, violation

of prompt-payment statutes, § 502(a) of ERISA, 29 U.S.C. §1132(a), breach of fiduciary duty under

ERISA, unjust enrichment, breach of implied contract, third-party beneficiary, quantum meruit,

declaratory judgment as to both non-ERISA and ERISA claims, an injunction, damages, and

attorneys' fees.

BCBSTX moved to dismiss Electrostim's second amended complaint.  (Docket Entry No.

36).  This motion to dismiss was based solely on Rule 12(b)(6).  (*Id.* at 1).  BCBSTX argued that

"[b]ecause ERISA pre-empts all Plaintiff's state law claims, Plaintiff does not have standing under

ERISA, and any surviving state law claims are insufficiently pleaded, all such claims must be

dismissed.  The only claim that can survive dismissal is Plaintiff's breach of contract claim

pertaining to benefit claims submitted during the term of the Agreement."  (*Id.* at 2).  BCBSTX

reserved its right to move to dismiss this part of the breach of contract claim depending on the

claims Electrostim identified as disputed.  (*Id.* at 3).

In its supplemental briefing in support of the motion to dismiss, BCBSTX stated that it had

located approximately 8,800 claims from Electrostim, of which roughly 2,300 had been denied.

(Docket Entry No. 73, at 2).  The 2,300 claims fell into four categories:

- 74 claims under the Federal Employee Program ("FEP") administered by BCBSTX;

- One claim under a Texas state government plan administered by BCBSTX;

- Two nongovernment "ASO" claims under plans administered by BCBSTX; and

- • 2,219 BlueCard claims under plans administered by Blue Cross Blue Shield entities other than BCBSTX.

(Docket Entry No. 42, Ex. 2).  BCBSTX amended its motion to dismiss to include the pretermination claims that it received from Electrostim and declined.  (Docket Entry No. 73, at 2 & n.2).  In its supplemental briefing, BCBSTX reasserted its arguments for dismissing the causes of action for suit on an account, prompt-payment violations, third-party beneficiary rights, and declaratory judgment. (*Id.* at 4 & n.6).  BCBSTX also argued that to the extent Electrostim based its quasi- or implied-contract claims on denials of these pretermination healthcare claims, those causes of action must also be dismissed.  (*Id.* at 4).  BCBSTX argued that to the extent the healthcare claims at issue arose under ERISA plans, the state-law causes of action had to be dismissed and the ERISA cause of action for breach of fiduciary duty was insufficiently pleaded to proceed.  (*Id.* at 6–9).  BCBSTX also argued that the second amended complaint presented no factual or legal basis for causes of action for denials of healthcare claims covered by the Federal Employee Program, the ASO programs, Texas state government plans, or BlueCard plans.  (*Id.* at 9–14).

BCBSTX supplemented its motion to dismiss to cover denials of healthcare claims arising from services provided after the parties' Participation Agreement had ended.  (Docket Entry No. 82). Electrostim had submitted only 273 of these posttermination claims to BCBSTX.  The rest had been submitted to other Blue Cross Blue Shield entities around the country.  During an April 23, 2013 hearing, Electrostim argued that the refusal or failure of the other Blue Cross Blue Shield entities to pay these claims were part of this case against BCBSTX.  (Docket Entry No. 86, at 58).  BCBSTX responded that these claims could not be part of the causes of action Electrostim asserted in this case because the claims had never been submitted to, or denied by, BCBSTX.  There was no basis to hold

BCBSTX liable for failing to pay claims it had never reviewed, and Electrostim did not sue the entities that had reviewed the claims and failed to pay them.  As this court told Electrostim after hearing its counsel's representations about the history of the 20,000 unsubmitted claims: "'By your own description of what occurred, you don't have the proper party because you didn't submit [the claims] to the entity that you are telling me you think you should have submitted [them] to.  And you didn't sue the entities that you did submit [the claims] to.'"  (Docket Entry No. 82, at 2 (quoting Docket Entry No. 86, at 58)).  BCBSTX argued that as to the 273 posttermination claims submitted to BCBSTX and the rest of the 20,000 claims that Electrostim acknowledged it had never submitted to BCBSTX, Electrostim's causes of action failed as a matter of law.  (*Id.* at 2 & n.2).

### III.    Analysis

#### A.      The Breach of Contract Claims

Electrostim alleged that BCBSTX breached the parties' Participation Agreement in three respects: (1) by failing to pay claims; (2) by improperly terminating the parties' Agreement; and (3) by failing to review the termination as the Agreement specified.  (Docket Entry No. 32, at ¶¶ 11-15).  As to the second and third parts of Electrostim's breach of contract causes of action — the parts based on improper termination — BCBSTX argued that there was no viable basis for liability.  This court granted BCBSTX's motion to dismiss the second breach of contract claim, because the Agreement provided that either party could terminate without cause by giving 90 days advance notice, and the documents properly considered under Rule 12(b)(6) showed that BCBSTX gave Electrostim notice 90 days before terminating and kept the Agreement in effect during the 90-day period.  Electrostim acknowledges in its Rule 59(e) motion that its termination claim was without basis and that any amendment would be futile.  (Docket Entry No. 92, at 6).

In this motion to amend the findings and judgment, Electrostim asserts that this court should not have dismissed with prejudice the breach of contract causes of action based on the failure to pay the healthcare claims.  The court's opinion dealt at length with Electrostim's failure-to-pay allegations and explained why they were dismissed with prejudice.  In analyzing the relationship between the state-law causes of action and ERISA, this court noted that Electrostim had acknowledged that "ERISA does preempt certain state law claims."  (Docket Entry No. 90, at 11). Electrostim argued that dismissal for preemption was "not appropriate under a Rule 12(b)(6)" motion.  Electrostim also argued that it did not know which of its claims arose from ERISA benefit plans, making an ERISA-preemption determination premature.  (Docket Entry No. 41, at ¶ 14). During oral argument, however, the parties, including Electrostim, acknowledged that the vast majority of the disputed claims in this suit arose under ERISA plans.  To the extent Electrostim's state-law breach of contract claims were based on ERISA-covered plans, the claims were properly dismissed.  Leave to amend those claims was properly denied as futile under the applicable law.  To the extent there were non-ERISA plans, Electrostim acknowledged that they were few.  Electrostim did not plead or otherwise identify which claims (if any) arose under non-ERISA plans.

Moreover, the court identified additional grounds for dismissing the state-law claims, including those for breach of nonpayment, besides ERISA preemption.  The additional grounds for dismissal included the lack of factual allegations in the second amended complaint that Electrostim's breach of contract cause of action based on the pretermination denial of healthcare claims under specific categories of plans — ASO and government-benefits plans — were improper or incorrect. (Docket Entry No. 90, at 19-21).  Electrostim did not allege any basis to infer that the claims for services rendered under these plans were "Covered Services" under the Agreement with BCBSTX

and therefore it failed to allege a plausible basis for entitlement to payment.  With respect to the

denials of the 2,219 pretermination BlueCard healthcare claims, the reasons for the failure to pay

varied from claim to claim and across the plans at issue.  The second amended complaint contained

no factual allegations that the denials were improper or incorrect.  And BCBSTX was not the proper

defendant for the majority of the claims that arose under ERISA plans.  Additionally, the second

amended complaint did not allege that BCBSTX exercised control over the denial of Electrostim's

BlueCard claims, as necessary to state an ERISA cause of action against BCBSTX for those claims.

*See LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844 (5th Cir. 2013).  These

were among the pleading deficiencies that led to the court's dismissal of the breach of contract

causes of action.  Electrostim did not explain why it did not, or how it could, cure these deficiencies,

as needed to support the relief it seeks in this motion.

**B.      The Claims Arising After the Provider Agreement was Terminated**

With respect to the approximately 20,000 healthcare claims that arose and were denied after

BCBSTX terminated the parties' Provider Agreement, Electrostim acknowledged that it had

submitted only 273 to BCBSTX for payment.  According to Electrostim, the claims it submitted to

non-BCBSTX Blue Cross affiliates around the country "were returned to EMSI without any

processing or adjudication or, in some instances, with a response that the claim was filed with the

wrong Blue Cross plan."  (Docket Entry No. 89, at 3).  Whether the posttermination claims at issue

included all 20,000 healthcare claims or only the 273 Electrostim stated it had submitted to

BCBSTX for payment, the second amended complaint failed to state a basis for liability for

BCBSTX's breach of contract.    The breach of contract cause of action failed as to the

posttermination healthcare claims because there was no contract in effect between the parties as to these claims.

The causes of action for equitable relief as to the posttermination healthcare claims — based on unjust enrichment and quantum meruit — also failed as a matter of law.  Electrostim did not allege that it provided services or benefits to BCBSTX, as opposed to other Blue Cross Blue Shield subscribers.  *See, e.g.*, *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex., Inc.*, No. 11–cv–2086, 2012 WL 1252512, at *3 (S.D. Tex. Apr. 11, 2012) (dismissing equitable claims because the patients were the beneficiaries of the provider's services — not defendant Blue Cross Blue Shield).  The breach of implied contract cause of action was dismissed for similar reasons, and also because Electrostim did not allege facts showing that after BCBSTX terminated the Provider Agreement with Electrostim, the parties had a meeting of the minds as to the essential terms of an implied contract.  *See Northfield Ins. Co. v. Mid-Continent Cas. Co.*, No. 09–cv–2077, 2010 WL 3701573, at *5 (S.D. Tex. Sept. 16, 2010).

The causes of action based on the posttermination claims Electrostim submitted to entities other than BCBCSTX failed for the additional reason that Electrostim acknowledged that BCBSTX did not receive, and therefore did not deny, the vast majority of the claims at issue in this lawsuit. The documents BCBSTX submitted with its motion to dismiss showed, and Electrostim acknowledged, that BCBSTX was not the Blue Cross entity responsible for reviewing or paying healthcare claims arising outside Texas.  Electrostim's causes of action for prompt-pay violations, for breach of fiduciary duty under ERISA, and arising out of an asserted third-party-beneficiary status, were dismissed because there were no allegations in the second amended complaint that could plausibly show that BCBSTX was liable for denying claims submitted to other entities.

Even if Electrostim had submitted the claims to BCBSTX, and even if it was the proper Blue Cross entity to determine whether claims for services provided outside Texas would be paid, without a contract between Electrostim and BCBSTX, the breach of contract cause of action failed.   And there was no ERISA cause of action for such claims because Electrostim did not allege any assignment of the insured's rights under an ERISA plan.   *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009)).   The second amended complaint contained no assignment allegations.   Electrostim alleged only that it was "a participant or beneficiary as defined in ERISA," (Docket Entry No. 32, at ¶ 23), and that it was an ERISA beneficiary or "a beneficiary of the insurance contracts between BCBSTX and its insureds," (*id.*, at ¶ 20).

Even if Electrostim had alleged that it had valid assignments for the unsubmitted claims, Electrostim did not and could not allege that such assignments entitled it to sue BCBSTX for the denial of posttermination claims for services covered by or claimed under plans or policies issued by other insurers.   *See Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) ("'[A]n assignee takes all of the rights of the assignor, no greater and no less.'" (quoting *FDIC v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001))); *see also Houk v. Comm'r of Internal Revenue*, 173 F.2d 821, 825 (5th Cir. 1949) ("[A]n assignee . . . stands in the same position as its assignor had stood").   The second amended complaint did not allege that the patients whose claims were submitted to non-BCBSTX entities were insured by BCBSTX or members of ERISA-governed plans administered by BCBSTX.   Electrostim alleged no connection between BCBSTX and the patients who obtained goods or services from Electrostim and who would have had to have assigned their rights to Electrostim.

In sum, the second amended complaint failed to state a basis for relief for the denial of the posttermination claims, both for those claims submitted to entities other than BCBSTX and those few submitted to BCBSTX.  The second amended complaint was dismissed with prejudice because there had been multiple opportunities to amend the pleadings and, in addition to the age of the claims and resulting untimeliness, future amendment would be futile.

## V.    Conclusion

This court did not dismiss Electrostim's claims lightly.  After extensive efforts to work  with the parties to identify the factual and legal basis of the claims, this court allowed Electrostim ample time to amend.  Electrostim did not seek to amend its complaint even after it had gathered and BCBSTX had produced extensive information about the healthcare claims.  Electrostim has asserted that it could amend to address the pleading deficiencies, but has not indicated how it could do so. For example, Electrostim has not explained how it could replead to address the acknowledged facts that the vast majority of the healthcare claims arose under ERISA plans and that the majority of the posttermination healthcare claims were covered by, and submitted to, other insurers besides BCBSTX.

Electrostim has failed to show a basis to set aside the judgment under Rule 59(e).  The motion to amend is denied.

SIGNED on October 4, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge