IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELECTROSTIM MEDICAL SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-2745 |
| HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, | § § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Electrostim Medical Services, Inc., provides electrostimulation products and services designed to assist patients with pain management and physical rehabilitation. Electrostim sued Health Care Service Corporation, a health insurance company that does business in Texas as Blue Cross Blue Shield of Texas ("Blue Cross"). Electrostim alleged that Blue Cross improperly denied or underpaid thousands of reimbursement claims that Electrostim submitted for providing medical services and products to patients with Blue Cross insurance plans. The court dismissed Electrostim's claims, and the Fifth Circuit affirmed in part, reversed in part, and remanded. *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731 (5th Cir. 2015).

After remand, the court issued a new scheduling order calling for Electrostim to file a motion for leave to file any amended complaint. Electrostim did not seek leave before it filed its third amended complaint. (Docket Entry No. 129). That complaint proposes to expand the factual scope of the litigation. It would add over 20,000 benefits claims that this court did not consider before the appeal, that the appellate court did not review, and that are not included in the subset of claims that

1

the appellate court remanded.

This development prompted a status conference in short order. Because Electrostim had not sought leave to file the third amended complaint, the court ordered Electrostim to file a motion for leave to do so and set a briefing schedule for Blue Cross's response and Electrostim's reply. (Docket Entry No. 135). The parties filed their briefs, (Docket Entries No. 136, 142, 143), and the court heard oral argument on April 7, 2017.

Based on the briefs, oral argument, and applicable law, the motion for leave to file the third amended complaint is denied. Electrostim may file another motion for leave to amend with a proposed amended complaint that does not have the deficiencies identified in this Memorandum and Order. The motion for leave must be filed no later than June 30, 2017. Electrostim must confine the proposed amended complaint that it may seek leave to file to the approximately 8,000 pretermination claims and 273 posttermination claims incorporated into the second amended complaint. These claims are clearly set out in the Blue Cross spreadsheets. Electrostim must identify the non-ERISA-governed claims that form the basis for relief, and it must allege a factual basis for the breach-of-contract claims that it seeks to bring as its patients' assignee.

After Electrostim files its motion for leave to file another amended complaint, Blue Cross may file any opposition in the usual course. If, after briefing, the court determines that Electrostim has failed to present legally or factually sufficient allegations or claims, they will be dismissed with prejudice and without leave to amend.

The reasons for these rulings are set out in detail below.

**I.     Background**

The factual background and procedural history are set out in detail in the Fifth Circuit's

opinion and this court's previous orders. *See Electrostim*, 614 F. App'x at 734-36; (Docket Entry No. 90). Only a very brief summary is needed here.

Electrostim's proposed third amended complaint asserts three causes of action. The first is that Blue Cross breached the provider agreement by failing to pay, or underpaying, Electrostim for medical services and products it provided to Blue Cross patients. The second is that Electrostim provided covered goods and services to Blue Cross patients on an open account with Blue Cross; that the charges for the goods and services were usual, reasonable, and customary; and that Blue Cross accepted the goods and services but did not pay Electrostim. The third, styled "Third-Party Beneficiary," is that Electrostim received assignments of benefits from the Blue Cross patients to whom it provided services and products, and that Blue Cross breached the patients' insurance policies when it failed to pay or underpaid Electrostim.

In the several years during which the parties vigorously litigated the dismissal and appeal, Electrostim failed to identify with reasonable specificity the reimbursement claims it was asserting. Electrostim eventually provided Blue Cross with enough information for Blue Cross to identify the benefit claims that Electrostim was alleging were improperly denied or underpaid. Blue Cross put the information into a spreadsheet that listed approximately 8,800 Electrostim claims submitted before Blue Cross terminated its provider agreement with Electrostim and 273 claims submitted after Blue Cross terminated the agreement.

At an April 23, 2013 hearing, Electrostim stipulated in open court, on the record, to incorporating into the second amended complaint the 8,800 pretermination and 273 posttermination claims shown in the spreadsheet. (Docket Entry No. 86 at 36). Both this court and the Fifth Circuit relied on that stipulation in describing and analyzing the factual allegations and the number and type

3

of claims in the case. The remanded claims are a subset of the stipulated 8,800 pretermination and 273 posttermination claims. *See Electrostim*, 604 F. App'x at 734-36; (Docket Entry No. 90 at 4-6).

Electrostim's proposed third amended complaint attaches a brand-new set of spreadsheets. These purport to describe the set of reimbursement claims that Electrostim alleges are at issue. These spreadsheets contain approximately 24,000 pretermination claims and 4,800 posttermination claims. This adds over 15,200 pretermination claims and over 4,500 posttermination claims to the claims in the case that this court and the Fifth Circuit considered.

Electrostim's motion for leave to amend is a cursory seven pages. Electrostim's main argument is that, because the proposed third amended complaint does not add new causes of action, Electrostim does not need to seek leave to amend. Electrostim argues that the spreadsheets that it attached to its proposed third amended complaint reflect only its damage allegations, not new causes of action. In the alternative, Electrostim argues that the liberal Rule 15 standard for amending is met and the amendment should readily be granted. Electrostim asserts that it did not unduly delay filing its third amended complaint and did not file it in bad faith. Electrostim notes that the amended complaint does not reflect repeated failures to cure pleading defects. Electrostim also insists that, although the case has been pending for over six years, it is still "in its infancy," and so the third amended complaint does not prejudice Blue Cross. Finally, Electrostim argues that it "never agreed or represented that the claims contained on defendants' spreadsheet represented the totality of claims."

Blue Cross disputes each of these points. Blue Cross argues that Electrostim is engaged in improper gamesmanship by dramatically expanding the scope of the case, after this court and the Fifth Circuit analyzed the much narrower set of claims that Electrostim stipulated were the claims

4

at issue. Blue Cross vigorously opposes Electrostim adding 20,000 new claims, each of which will have to be individually proved, six years into the case. Blue Cross emphasizes that Electrostim confirmed on the record in open court that the 8,800 pretermination and 273 posttermination claims were incorporated into the second amended complaint and were the claims asserted in that complaint. Blue Cross points out that after this court dismissed Electrostim's causes of action with prejudice, Electrostim filed a Rule 59 motion for reconsideration that conspicuously omitted any argument that the court had failed to address the 20,000 claims that Electrostim wants to add now. Instead, Electrostim—and everyone else involved in the litigation—litigated here and in the Fifth Circuit with the clearly evident shared assumption that the only claims at issue were the 8,800 pretermination and 273 posttermination claims shown in the Blue Cross spreadsheets and incorporated into Electrostim's second amended complaint. Therefore, Blue Cross argues, the Fifth Circuit's mandate on remand only allows Electrostim to assert the remanded subset of the claims from the second amended complaint.

Blue Cross argues that Electrostim's proposed third amended complaint should also be rejected for undue delay. Blue Cross argues that there is no reason Electrostim could not have identified and asserted these 20,000 claims in the three years between filing and dismissal. Electrostim never challenged the Blue Cross spreadsheets, despite having ample opportunity to do so. Instead, Electrostim stipulated to incorporating them into the second amended complaint. Electrostim had ample opportunity to seek to amend its complaint to add the claims it now wants reimbursement for before the dismissal motions were litigated; its failure to do so weighs heavily against allowing amendment now.

Finally, the services at issue occurred long before this court dismissed the action. The delay

raises a likelihood that limitations will make many of the claims asserted in the proposed third amended complaint futile. At a minimum, there is prejudice from the difficulty that the long delay presents in locating the witnesses who know about, and the documents that reference, these added claims.

The limitations bar arises if the added claims do not relate back. Blue Cross argues that, unlike a new legal theory based on an already pleaded set of facts, which could relate back, each added claim is a new transaction or occurrence that would not relate back. Electrostim provided the products and services, and the nonpayment or underpayment took place, more than four years ago. The Texas statute of limitations for contract, open account, and third-party beneficiary actions would, according to Blue Cross, bar the added claims now.

Additionally, a term in the provider agreement requires Electrostim to have presented its claims to Blue Cross within a year of the date that the "Covered Service" was provided. According to Blue Cross, many of the claims in Electrostim's new spreadsheets have "Service Date" and "Date of Submission" entries more than a year apart. These claims, Blue Cross says, were improper when made and separately barred on that basis.

Even setting aside the added claims, Blue Cross argues that the proposed third amended complaint does not comply with the Fifth Circuit's mandate. First, the pleading does not adequately differentiate between ERISA and non-ERISA claims. According to Blue Cross, under the mandate, Electrostim had to "exclude all of the ERISA-governed claims that were denied or underpaid based on right-to-payment issues, leaving only those claims that were allowed in full, but paid the wrong amount under the Provider Agreement." (Docket Entry 142 at 20). Electrostim argues that it cannot find this information; Blue Cross argues that Electrostim acknowledged, on the record, that Emdeon,

its third-party clearinghouse for insurance claims, could provide the information. (*Id.* citing Docket Entry No. 120, Ex. C at 6, 25).

Next, according to Blue Cross, the amended complaint does not adequately allege a breach of the provider agreement because it does not plead that Electrostim submitted each claim to Blue Cross; that the claims were timely and otherwise complied with filing requirements; that the claims related to "Covered Services"; and that Blue Cross did not pay the contract amount. The proposed third amended complaint does not, Blue Cross argues, identify claims submitted to Health Care Service Corporation, which operates in Texas as Blue Cross Blue Shield of Texas. Rather, the spreadsheet simply shows that they were submitted to *some* Blue Cross Blue Shield entity s*omewhere* in the United States. Electrostim sued only Health Care Service Corporation. Unless Electrostim presented the claims to Blue Cross Blue Shield of Texas, there is no breach of the provider agreement with Blue Cross Blue Shield of Texas.

Nor, according to Blue Cross, does the proposed third amended complaint adequately allege that the difference between the amount that Electrostim claimed and the amount paid breached the provider contract. In order to show that underpayment breached the agreement, Electrostim would have to plead that it properly and timely submitted the claim to Blue Cross Blue Shield of Texas, that the claim was for a "Covered Service," and that the amount paid was less than the amount set out in the Provider Agreement less any copays, coinsurance, or deductible. Many of the claims that Electrostim is now trying to add are listed as "closed until requested information received" or "coverage issues were asserted and no payment was made." Blue Cross argues that without additional facts pleading that, for example, Electrostim provided the requested information for a claim and that information showed that coverage was proper, Electrostim has not plausibly alleged

7

that Blue Cross breached the provider agreement by refusing to pay that claim.

Next, Blue Cross argues that the proposed amended complaint does not present a plausible suit on an open account for the posttermination claims. The only "account" that could have existed was the contract relationship created by the provider agreement. For the posttermination claims, there is no agreement and no open account.

Finally, Blue Cross argues that the proposed third amended complaint does not allege a viable third-party beneficiary theory. The Fifth Circuit instructed this court to give Electrostim leave to amend its third-party beneficiary argument, but that assumed that Electrostim had received an assignment of rights from the patients receiving the services. The repleaded cause of action would not be a third-party beneficiary claim but rather a subrogated or assigned breach-of-contract claim based on the individual patient's health insurance policy. Electrostim's proposed third amended complaint alleges that it received an assignment for all of the claims it proposes to assert. But the proposed amended complaint does not allege a breach of contract for these thousands of individual claims because it does not identify policy provisions in the patients' health insurance plans that Blue Cross violated, or even which patients assigned the rights. Allegations that Electrostim is the assignee of *some* patients' rights under *some* insurance policies and that Blue Cross violated the terms of those policies in *some* unspecified way, is not sufficient, Blue Cross urges.

The court has laid out Blue Cross's arguments in detail in part to show how many issues and new complications granting leave to file the third amended complaint would create. Electrostim did file a reply, responding better to some arguments than others.

First, Electrostim argues that these "new" claims were in fact part of the second amended

8

complaint, and that its proposed third amended complaint reduces the number of claims and asserted damages. Electrostim's second amended complaint had sought over $10 million in damages, while its proposed third amended complaint seeks less than $2 million. Therefore, Electrostim argues, it did not even need to seek leave to amend. Electrostim argues in the alternative that the liberal Rule 15 standard requires granting leave to amend to the extent that leave is necessary here. Electrostim denies that it is "bound" by the Blue Cross spreadsheets (despite agreeing that the claims they listed were incorporated into the second amended complaint as the claims asserted). Leave would not be futile because, according to Electrostim, the claims are not time-barred; even if the court found that the claims were not asserted before, they relate back to the initial complaint because they are "related to original conduct of BCBSTX."

Similarly, Electrostim argues that it did not unduly delay because the "new" claims have always been at issue. Electrostim argues that, to "the extent there is a disagreement as to the amount and number of claims," it "was under the assumption its full battery of claims were at issue in this matter. To the extent they are not," there was no "undu[e] delay[] in amending its pleading to assert or reassert these claims." (Docket Entry No. 143 at 9).

Finally, Electrostim argues that its proposed amended complaint complies with the Fifth Circuit's opinion and mandate, because:

- the Fifth Circuit already blessed its approach to pleading the claim for breach of the provider agreement;

- Electrostim has no way of knowing whether ERISA preempts some of the claims, because it has not done discovery into which claims were made under ERISA plans and which were not;

9

- the Fifth Circuit approved its pleadings on the suit on an open account theory; and

- the amended third-party beneficiary theory is legally sufficient because Electrostim alleges that it received assignments from all of the patients it treated.

The arguments and responses are analyzed below.

**II.     The Legal Standards**

A party may amend its pleading once without seeking the court's leave or the adverse party's consent before a responsive pleading is served. FED. R. CIV. P. 15(a). After a responsive pleading is served, the party may amend only "with the opposing party's written consent or the court's leave." *Id.* Although a court "should freely give leave when justice so requires," *id.*, leave to amend "is not automatic," *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). A district court reviewing a Rule 15(a) motion to amend pleadings may consider factors such as "undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party, and futility of amendment." *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir.1996). A plaintiff should be denied leave to amend a complaint if "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F.App'x 534, 535 (5th Cir. 2007) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.").

Futility is evaluated under the standard for deciding a motion to dismiss under Rule 12(b)(6). *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

**III.    Analysis**

The motion and response require the court to decide two separate sets of issues: first, Electrostim's expansion of the factual basis for relief, and second, Blue Cross's futility arguments. The court addresses these issues in turn.

A. **The new reimbursement claims not included in the second amended complaint cannot be added by amending at this stage of the litigation.**

The record and law undermine the arguments that Electrostim makes in response to Blue Cross's opposition to its proposed third amended complaint.

Electrostim's argument that it has asserted the 20,000-plus claims identified in its proposed third amended complaint all along is puzzling. Electrostim stipulated on the record that the 8,800 pretermination and 273 posttermination claims shown in the Blue Cross spreadsheets were the claims incorporated into—made part of—its second amended complaint as the factual reimbursement claims it asserted. (Docket Entry No. 86 at 36). Electrostim does not explain why, after stipulating on the record that the claims in Blue Cross's spreadsheets were incorporated into the second amended complaint, it should now, three years, a dismissal, an appeal, and a partial remand later, be permitted to greatly expand the factual scope of the litigation.

Electrostim cites Rule 15's liberal standard for amendment. Yes, it is liberal, but it is not infinitely forgiving. All courts and parties involved—except, perhaps, Electrostim—operated under the assumption that the claims set out in the Blue Cross spreadsheets and stipulated to be all the claims asserted in the second amended complaint were the full universe of claims. Both this court and the Fifth Circuit relied on Electrostim's stipulation in analyzing the factual scope of the case. *See Electrostim*, 604 F. App'x at 734-36; (Docket Entry No. 90 at 4-6). Electrostim had years during which it could have presented all or part of the set of claims it now proposes asserting. Electrostim did not do so. Instead, it stipulated to the 8,800 pretermination and 273 posttermination

12

claims as the claims at issue. Allowing the proposed third amended complaint would cause even greater delay, given the time needed to conduct discovery into these added claims. And allowing the proposed amendment would significantly prejudice Blue Cross's defense. Blue Cross has proceeded on the assumption that the spreadsheets it prepared represented the scope of the case. Witnesses knowledgeable about the added claims are likely gone, or hard to find, and their memories of pertinent events dimmed. Documents once readily available are likely to be hard to find, retrieve, and produce, if that can be done. In short, there is undue delay in filing the added claims in the proposed third amended complaint, and granting the motion for leave to amend would cause significant prejudice.

Electrostim's motion for leave to file the third amended complaint is denied. A new proposed amended complaint must limit its factual basis to the claims identified in the Blue Cross spreadsheets incorporated into the second amended complaint.

**B. Futility and other arguments also weigh against granting leave to file the proposed third amended complaint**.

The court need not address in depth Blue Cross's arguments that the proposed added claims are time-barred or that these claims were not presented timely, because it has denied leave to amend to add those claims. But it is worth nothing that, at a minimum, the relation-back and limitations arguments would require significant time and effort to present by motion and response, much less decide. Because relation back is often an unclear standard, injecting this issue into the case will itself add to the delay, cost, and burden on the parties and court. The uncertainty of the outcome is an added consideration. Futility, perhaps; delay and doubt, certainly.

Blue Cross's next argument is that Electrostim has not adequately segregated ERISA-governed claims from non-ERISA-governed claims. Because the court is limiting the new amended

13

complaint to claims identified in the Blue Cross spreadsheets incorporated into the second amended complaint, most of the issues and arguments the parties raised on this point go by the wayside. At the motion hearing on April 7, counsel for Blue Cross stated that if the case was confined to the Blue Cross spreadsheets, the ERISA/non-ERISA segregation issue was moot, because the Blue Cross spreadsheets include the information necessary to determine whether a specific claim was denied (presenting an ERISA-preempted right-to-payment issue) or instead was allowed in full but underpaid (presenting a rate-of-payment issue that the Fifth Circuit said could go forward). Electrostim must determine which of the claims in the Blue Cross spreadsheet fall into which category.

When Electrostim seeks leave to file a new amended complaint, that complaint must clearly identify the claims from the spreadsheet that are rate-of-payment claims that are not foreclosed by the Fifth Circuit's opinion. The suit can proceed only as to those claims that were accepted but underpaid, in violation of the provider agreement's rate-of-payment provisions. *Electrostim*, 614 F. App'x at 737-38. Electrostim has the information necessary to segregate the claims and it must do so in order to move forward on any of its theories of recovery.

Blue Cross's argument that the proposed amended complaint does not adequately plead a breach of the provider agreement is well presented. Nonetheless, the court is bound by the Fifth Circuit's opinion to the contrary. *Electrostim*, 614 F. App'x at 739. The claim for breach of the provider agreement is pleaded adequately and can proceed. Electrostim must must limit the factual basis for the relief it seeks to non-ERISA claims from the Blue Cross spreadsheet in the second amended complaint to comply with the mandate accompanying the remand. The same is true of Blue Cross's argument that the posttermination suit on an open account claims did not survive the

14

termination of the provider agreement. The Fifth Circuit unambiguously approved the posttermination open-account claim. *Id.* at 745. The claim can proceed.

Blue Cross's final argument is that Electrostim cannot plead a third-party beneficiary claim. The Fifth Circuit's opinion does not foreclose this argument. Electrostim argues that because the complaint pleads that it "received an assignment of benefits from all patients/insureds for those claims at issue herein," it has stated a third-party beneficiary claim. But, as Blue Cross points out, receiving an assignment does not make Electrostim a third-party beneficiary to the plan. Instead, the assignment gives Electrostim the right to enforce the insured patient's rights under the plan. The circuit held as much, finding that Electrostim does not have a third-party beneficiary claim but might have a claim for breach of individual patients' insurance plans with Blue Cross. That assumes that Electrostim did receive an assignment of the patients' rights under their insurance policies and can plead an adequate claim for breach of the plan. *Id.* at 742. An amendment to plead a third-party beneficiary theory would be futile.

To the extent Electrostim has received assignments from individual patients, it is entitled to sue on those patients' plans. Electrostim's new amended complaint can assert breach-of-contract claims for each patient who assigned the right to enforce her plan rights to Electrostim. But Electrostim cannot simply allege that it has received an unspecified number of assignments from unspecified persons under unspecified insurance contracts and that Blue Cross's failure to pay a given claim was a breach of some contract for some unspecified reason. Each patient's assigned claim is an individual breach of contract. Electrostim must plead enough facts, with enough detailed information, to make these breach-of-contract claims plausible. It has not done so in the proposed third amended complaint.

15

In the amended complaint that Electrostim may seek leave to file, it must make plausible allegations about who assigned rights under what insurance policy and identify what policy terms Blue Cross breached and how. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, No. 3:12-CV-1607-O, 2014 WL 10212850, at *4–5 (N.D. Tex. July 21, 2014); *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1003-04 (S.D. Tex. 2011) (collecting cases dismissing Texas breach-of-contract actions for failure to identify what contracts formed the basis of the suit or what provisions of a contract the defendant breached). No doubt this is a daunting task, given the number of claims in issue. Electrostim need not set out every assignment and breached contract provision in separate breach-of-contract pleadings. But it must identify the persons from whom it received assignments. It also must provide a sufficient number of exemplar policies and policy terms it claims Blue Cross breached, and facts explaining why the policies are representative. For each exemplar, Electrostim must identify what policy terms Blue Cross breached and explain how Blue Cross violated its obligations. In short, Electrostim must plausibly allege in the new amended complaint it may seek leave to file that it has provided the court a representative sample of the policies under which it has been assigned a right to sue, identified the policy terms that Blue Cross breached, and explained how Blue Cross breached.

**IV.     Conclusion**

The motion for leave to amend, (Docket Entry No. 136), is denied. Electrostim may file another motion for leave to amend with a proposed amended complaint that does not have the deficiencies identified in this Memorandum and Order. The motion for leave must be filed no later than June 30, 2017. After Electrostim files its motion for leave to file another amended complaint,

Blue Cross may file any opposition in the usual course.

        SIGNED on May 3, 2017, at Houston, Texas.

                                                          Lee H. Rosenthal
                                         Chief United States District Judge